1
2
3
4

**UNITED STATES DISTRICT COURT**

5

**NORTHERN DISTRICT OF CALIFORNIA**

6

**SAN JOSE DIVISION**

7

8   YEN HOANG, Individually and on Behalf
    of All Others Similarly Situated
9
                    Plaintiff,
10
        v.
11
    CONTEXTLOGIC, INC., et al.,
12
                    Defendants.
13
14
15
16

Case No.  21-cv-03930-BLF

**ORDER APPOINTING XIAOQUAN YANG AND ALEXANDER DE BLOCK AS CO-LEAD PLAINTIFFS; AND APPROVING SELECTION OF CO-LEAD COUNSEL**

[Re:  ECF 27, 50]

17       This consolidated putative class action for alleged violations of the Securities Act of 1933

18   ("Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act") is brought

19   against Defendant ContextLogic, Inc. ("ContextLogic" or "the Company"), Company officers and

20   directors, and underwriters of the Company's initial public offering ("IPO").

21       This order addresses two motions for appointment of lead plaintiff and lead counsel, the

22   first brought by Xiaoquan Yang and Alexander De Block ("Yang & De Block") and the second

23   brought by Joel Newman and Anand Chetram ("Newman & Chetram").

24       For the reasons discussed below, the motion brought by Yang & De Block is GRANTED

25   and the motion brought by Newman & Chetram is DENIED.

26       The Court APPOINTS Yang & De Block as Co-Lead Plaintiffs and APPROVES Yang &

27   De Block's selection of Glancy Prongay & Murray LLP and The Rosen Law Firm, P.A. as Co-

28   Lead Counsel.

United States District Court
Northern District of California

## I.   BACKGROUND

ContextLogic is a mobile ecommerce company that operates the Wish platform, which connects consumers with merchants.[1]  Compl. ¶ 4, ECF 1.  The Company completed its IPO on December 16, 2020, selling 46 million shares of Class A common stock at $24 per share.  *Id*. ¶ 6.  On January 14, 2021, an article published on *Investorplace.com* stated that the Company was suffering from slowing growth and fulfillment issues.  *Id*. ¶ 65.  The Company's share price fell nearly 11.7%, closing at $24.84 per share on January 15, 2021.  *Id*.  On March 8, 2021, the Company announced its fourth quarter and fiscal year 2020 financial results, disclosing among other things that in the fourth quarter of 2020 its monthly active users ("MAUs") declined 10% from the fourth quarter of the prior year.  *Id*. ¶ 66.  The Company's share price fell 10% on that news, closing at $15.94 per share on March 8, 2021.  *Id*. ¶ 68.  On May 12, 2021, ContextLogic announced that its MAUs declined another 7% in the first quarter of 2021.  The Company's share price fell 29% on that news, closing at $8.11 per share on May 13, 2021.

Four putative class actions were filed against ContextLogic and related defendants in this District:  (1) *Boehning v. ContextLogic Inc. et al.*, No. 21-cv-03671; (2) *Hoang v. ContextLogic, Inc., et al.*, No. 21-cv-03930; (3) *Asmat v. ContextLogic, Inc., et al.*, No. 21-cv-05015; and (4) *Lam v. ContextLogic, Inc., et al.*, No. 21-cv-05411.  Those actions asserted claims under the Securities Act on behalf of investors who purchased ContextLogic securities traceable to the registration statement and prospectus issued in connection with the Company's IPO, and claims under the Exchange Act on behalf of investors who purchased ContextLogic securities between December 16, 2020 and May 12, 2021, inclusive (the "Class Period").

Pursuant to the procedure set forth in the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), notice of the first-filed *Boehning* action was published on May 17, 2021.  Eight movants filed lead plaintiff motions in the *Boehning* action.  Before completion of briefing, named plaintiff Jarrett Boehning voluntarily dismissed *Boehning*.  The lead plaintiff movants continued

---

[1] These facts are drawn from the allegations of the complaint filed in *Hoang*, and are not disputed by the parties.

United States District Court
Northern District of California

briefing their motions based on their view that Jerrett Boehning's voluntary dismissal was effective only as to his own claims and that the district court would appoint a lead plaintiff to represent the entire putative class. However, the *Boehning* court terminated all pending motions in August 2021, commenting that the motions could be refiled in one of the open cases. The *Boehning* court terminated without comment a subsequent administrative motion to relate *Hoang*, *Asmat*, and *Lam* to *Boehning* and to rule on the lead plaintiff motions.

In August 2021, the three remaining actions – *Hoang*, *Asmat*, and *Lam* – were related and assigned to a single judge. Yang & De Block thereafter filed a motion in *Hoang* seeking consolidation of the three actions, appointment as co-lead plaintiffs, and approval of co-lead counsel. After that motion was filed, the district judge who related the cases filed an order of recusal. The cases were reassigned to the judge who presided over the original *Boehning* action, but that judge also filed an order of recusal. *Hoang*, *Asmat*, and *Lam* eventually were reassigned to the undersigned judge in December 2021.

On January 11, 2022, this Court inquired whether Yang & De Block had given notice of their motion filed in *Hoang* to all parties in the related *Asmat* and *Lam* actions. Yang & De Block indicated that they gave notice of their motion to the plaintiffs in *Asmat* and *Lam* only after the Court's inquiry. On January 18, 2022, Newman & Chetram filed a motion for appointment as co-lead plaintiffs and approval of co-lead counsel, stating that previously they had been unaware of the motion filed by Yang & De Block in *Hoang*. To ensure that all interested parties received notice of both motions, this Court ordered that the motions be filed in *Asmat* and *Lam* at least thirty-five days prior to the March 3, 2022 hearing on the motions. No other putative class members filed motions or responded to the pending motions.

The Court heard argument on both motions on March 3, 2022. On March 4, 2022, the Court granted the portion of the Yang & De Block motion requesting consolidation of *Hoang*, *Asmat*, and *Lam*. The Court directed that all future filings be made only in *Hoang* and that *Asmat* and *Lam* be closed. The Court advised that the competing lead plaintiff motions would be addressed in a separate order.

1

2

3

4

5

6

7

8

9

10

11

12

13

United States District Court
Northern District of California

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    LEGAL STANDARD

### A.    Lead Plaintiff

The PSLRA governs appointment of lead plaintiffs in all private securities class actions. *See* 15 U.S.C. §§ 77z-1(a)(3), 78u-4(a)(3).  The district court shall appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members," also referred to as the "most adequate plaintiff."  *Id*. §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i).

The PSLRA "provides a simple three-step process for identifying the lead plaintiff."  *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). At the first step, the pendency of the first-filed action, the claims made, and the purported class period must be publicized in a "widely circulated national business-oriented publication or wire service."  *Id*. (internal quotation marks and citation omitted).  The notice must advise that any putative class member may seek appointment as lead plaintiff.  *See id*.

Second, the court must identify the presumptive lead plaintiff, that is, "the movant with the largest financial interest who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021) (internal quotation marks and citation omitted).  To determine which movant has the largest financial interest, the court "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit."  *Cavanaugh*, 306 F.3d at 730.  When making that comparison, "the court may select accounting methods that are both rational and consistently applied."  *Id*. at 730 n.4.  The court then must determine whether the movant with the largest financial interest "satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'"  *Id*. at 730.  At this stage in the proceedings, only a "a prima facie showing of adequacy and typicality" need be made.  *Mersho*, 6 F.4th at 899.  If the plaintiff with the largest financial interest satisfies Rule 23(a), that plaintiff "becomes the presumptively most adequate plaintiff."  *Id*. (internal quotation marks and citation omitted."  "If the movant with the largest losses does not satisfy the Rule 23 requirements, the district court must then look to the movant with the next largest losses and repeat the inquiry."  *Id*.  "At this step, the process is not adversarial, so the Rule 23 determination should be based on

4

only the movant's pleadings and declarations." *Id.*

"At step three, the process turns adversarial." *Mersho*, 6 F.4th at 899 (internal quotation marks and citation omitted). The court must "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F.3d at 730. The presumption may be rebutted only upon proof that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Mersho*, 6 F.4th at 899. "If the presumption is not rebutted, the presumptively most adequate plaintiff must be selected as lead plaintiff." *Id.*

**B.     Lead Counsel**

Under the PSLRA, the lead plaintiff has the right, subject to court approval, to select and retain counsel to represent the class. *See Cohen v. U.S. Dist. Ct.*, 586 F.3d 703, 711 (9th Cir. 2009). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Id.* at 712.

**III.   DISCUSSION**

In evaluating the lead plaintiff motions brought by Yang & De Block on the one hand, and Newman & Chetram on the other, the Court follows the three-step process provided in the PSLRA and summarized in *Cavanaugh*.

**A.     Notice**

At the first step, the Court must confirm that the PSLRA's notice requirement was met. A notice was published in *Business Wire* on May 17, 2021, announcing the pendency of the first-filed *Boehning* action. *See* Linehan Decl. ¶ 2 & Exh. A. That notice contained all required information, including a description of the claims made and the proposed class period. *See id.* The notice advised that any putative class member could seek appointment as lead plaintiff. *See id.* In response, eight timely motions for lead plaintiff were filed in *Boehning*, including separate motions by Yang, De Block, Newman, and Chetram.

After *Boehning* was dismissed, Yang & De Block joined forces to file their current motion in the second-filed action, *Hoang*, seeking appointment as co-lead plaintiffs. After receiving

1   notice of that motion, Newman and Chetram joined forces to file a competing motion in *Hoang* for

2   appointment as co-lead plaintiffs.  To ensure that all interested parties had an opportunity to renew

3   their lead plaintiff motions, or to file briefing on the pending motions, this Court required that the

4   pending motions be filed in *Asmat* and *Lam* at least thirty-five days before the hearing date on the

5   motions.  As noted above, no other putative class members renewed their lead plaintiff motions or

6   filed briefing on the pending motions.

7          Based on this record, the Court finds that the PSLRA's notice requirement was satisfied.

8          **B.      Presumptive Lead Plaintiff**

9          At the second step, the Court must identify the presumptive lead plaintiff by determining

10   (a) which of the two sets of movants have the largest financial interest in the relief sought by the

11   class, and (b) whether the movants with the largest financial interest satisfy the requirements of

12   Rule 23(a).

13                        **1.      Largest Financial Interest**

14          "[N]either the PSLRA nor the Ninth Circuit specifies precisely how to calculate which

15   plaintiff has the largest financial interest."  *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-

16   03451-LHK, 2011 WL 566814, at *3 (N.D. Cal. Feb. 15, 2011).  "The only real guidance offered

17   by the Ninth Circuit in *In re Cavanaugh* is that 'the court may select accounting methods that are

18   both rational and consistently applied' in order to 'compare the financial stakes of the various

19   plaintiffs and determine which one has the most to gain from the lawsuit.'"  *Id.* (quoting *In re

20   Cavanaugh*, 306 F.3d at 730 n.4).

21          District courts within the Ninth Circuit generally consider the four "*Lax*" factors, first

22   articulated in the *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036 (N.D. Ill. Aug. 11,

23   1997), to determine which plaintiff has the greatest financial interest.  *See Lako v. Loandepot, Inc.*,

24   8:21-cv-01449-JLS-JDE, 2022 WL 1314463, at *3 (C.D. Cal. May 2, 2022) (applying *Lax*

25   factors); *Weston v. DocuSign, Inc.*, No. 22-CV-00824-WHO, 2022 WL 1301770, at *2 (N.D. Cal.

26   Apr. 18, 2022) (same); *Sneed v. AcelRx Pharms., Inc.*, No. 21-CV-04353-BLF, 2021 WL

27   5964596, at *2 (N.D. Cal. Dec. 16, 2021) (same); *Nicolow v. Hewlett Packard Co.*, No. 12-05980

28   CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (same).  Those factors are:  "(1) the

United States District Court
Northern District of California

6

number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *Sneed*, 2021 WL 5964596, at *2. "Of the four factors, courts consider the fourth factor, the approximate losses suffered, as most determinative in identifying the plaintiff with the largest financial loss." *Lako*, 2022 WL 1314463, at *3 (internal quotation marks and citation omitted).

Predictably, the competing movants have different views of how these factors cut in this case. As an initial matter, Newman & Chetram request that the Court consider only losses under the Exchange Act, and disregard all losses under the Securities Act, when determining which movants have the greatest financial interest. The reason for this request is apparent when the Court looks at the parties' claimed losses. While the losses claimed by the competing movants are fairly close under the Exchange Act, the losses claimed by Yang & De Block under the Securities Act far exceed those claimed by Newman and Chetram. Thus, Newman & Chetram's only realistic chance at being deemed the movants with the greatest financial interest is to persuade the Court to ignore the Securities Act losses.

Newman & Chetram contend that "Exchange Act losses are a better measure of financial interest in this litigation than Securities Act losses," because the number of class members seeking recovery under the Exchange Act will be much greater than the number of class members seeking recovery under the Securities Act. Newman & Chetram Mot. at 9, ECF 50. Based on that argument, Newman & Chetram request that only Exchange Act losses be considered in the determination of greatest financial interest, and that the substantial loss of $516,859.43 claimed by Yang & De Block under the Securities Act be disregarded. The authorities cited by Newman & Chetram do not support their proposed approach. *See Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368-LHK, 2014 WL 2604991 (N.D. Cal. June 10, 2014); *Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008). The cited portion of *Fusion-io* states that "[f]or purposes of appointing a lead plaintiff, the longest class period governs." *Fusion-io*, 2014 WL 2604991, at *1 n.3. The *Fusion-io* court did not discuss if or how the inclusion of claims under both the Exchange Act and the Securities

1    Act affects the determination which plaintiff has the largest financial interest.  *See id.* at *4.  In

2    fact, all parties in *Fusion-io* agreed which class member had the greatest financial loss.  *See id.*  In

3    *Eichenholtz*, "the court decline[d] the invitation to artificially shorten the class period when

4    determining the plaintiff with the greatest financial interest in this litigation."  *Eichenholtz*, 2008

5    WL 3925289, at *3.  *Eichenholtz* did not address appointment of a lead plaintiff in a case

6    involving claims under both the Exchange Act and the Securities Act.

7         Newman & Chetram argue that the adoption of longer class periods in *Fusion-io* and

8    *Eichenholtz* support the general proposition that courts should "assess financial interest with

9    reference to the most inclusive class definition."  Newman & Chetram Mot. at 9.  In this Court's

10   view, *Fusion-io* and *Eichenholtz* cannot be read in this manner.  The Ninth Circuit has offered

11   clear guidance that "the district court must identify which movant has the *largest alleged losses*

12   and then determine whether that movant has made a prima facie showing of adequacy and

13   typicality.  *Mersho*, 6 F.4th at 899; *see also Cavanaugh*, 306 F.3d at 729 ("[T]he district court

14   must consider the losses allegedly suffered by the various plaintiffs.").  Nothing in the Ninth

15   Circuit's guidance, or in any other case of which this Court is aware, suggests that a movant's

16   losses should be considered only as to claims asserted by the majority of putative class members.

17        In *CTI Biopharma*, the district court resolved contested lead plaintiff motions in favor of

18   the movants with the largest collective loss in a case involving claims under both the Exchange

19   Act and the Securities Act, even though those movants arguably lacked standing under the

20   Exchange Act.  *In re CTI Biopharma Corp. Sec. Litig.*, No. C16-216RSL, 2016 WL 7805876, at

21   *4 (W.D. Wash. Sept. 2, 2016).  The *CTI Biopharma* court reasoned that "courts often appoint

22   purchasers of one type of securities to represent purchasers of other types of securities of the same

23   issuer where the interests of those purchasers are aligned."  *Id.* (internal quotation marks and

24   citation omitted).  Nothing in this record suggests that Yang & De Block would not represent the

25   interests of class members asserting claims under the Exchange Act, particularly as Yang & De

26   Block claim hundreds of thousands of dollars of Exchange Act losses.

27        The Court therefore denies Newman & Chetram's request to limit the calculation of

28   greatest financial interest to claims under the Exchange Act.  The Court will apply the *Lax* factors

United States District Court
Northern District of California

8

based on consideration of the movants' total claimed losses under both the Exchange Act and the Securities Act.  The Court notes that only Yang & De Block have addressed the first three *Lax* factors – the number of shares purchased, the number of net shares purchased, and the total net funds expended.  Those figures were provided in Yang & De Block's reply brief.  At the hearing, counsel for Newman & Chetram stated, "I would not agree with the numbers in those charts necessarily, and I would just – I just want to put in an objection against that."  Hrg. Tr. 26:19-21, ECF 72.  However, counsel did not articulate any substantive reasons for rejecting Yang & De Block's figures.  The Court acknowledges that it denied Newman and Chetram's motion for leave to file a sur-reply.  *See* Order, ECF 60.  However, Newman & Chetram's proposed sur-reply did not offer specific objections to Yang & De Block's figures relating to the first three Lax factors, nor did it offer competing figures.  *See* Newman & Chetram Prop. Sur-Reply, ECF 58-2.  Because Newman & Chetram have failed to address the first three *Lax* factors, and absent substantive objections to the figures offered by Yang & De Block, the Court accepts those figures for purposes of evaluating the current motions.

### a. *Lax* Factor 1 – Number of Shares Purchased

The first *Lax* factor requires the Court to consider the number of shares purchased during the class period.  Yang & De Block purchases 106,771 shares, while Newman & Chetram purchases 119,315 shares.  This factor slightly favors Newman & Chetram.

### b. *Lax* Factor 2 – Number of Net Shares Purchased

The second *Lax* factor requires the Court to consider the number of net shares purchased during the class period.  Yang & De Block purchased 96,771 net shares, while Newman & Chetram purchased 37,598 net shares.  This factor favors Yang & De Block.

### c. *Lax* Factor 3 – Total Net Funds Expended

The third *Lax* factor requires the Court to consider the total net funds expended during the during the class period.  Yang & De Block expended $1,481,811.57 during the class period, while Newman & Chetram expended $727,821.29 during the class period.  This factor favors Yang & De Block.

#### d.     *Lax* Factor 4 – Approximate Losses

The fourth *Lax* factor requires the Court to consider the approximate losses suffered by the movants during the class period.  As noted above, this factor is given the greatest weight.  District courts within the Ninth Circuit use a variety of accounting methods to calculate losses in lead plaintiff motions.  These methods generally fall into two categories:  those that calculate actual economic losses suffered, without regard for the possibility of recovery; and those that calculate losses that are potentially recoverable under applicable statutes and case law.  *See Mehedi v. View, Inc.*, No. 21-CV-06374-BLF, 2022 WL 377406, at *4 (N.D. Cal. Feb. 8, 2022).

Methods for calculating actual economic losses suffered include the first-in-first-out ("FIFO") method and the last-in-first-out ("LIFO") method.  *See Schueneman v. Arena Pharms., Inc.*, No. 10cv1959 BTM (BLM), 2011 WL 3475380, at *3 (S.D. Cal. Aug. 8, 2011).  "Under FIFO, stocks which were acquired first are assumed to be sold first for loss calculation purposes." *Perlmutter*, 2011 WL 566814, at *10 (internal quotation marks and citation omitted).  "Under LIFO, stocks which were acquired most recently are assumed to be sold first."  *Id.* (internal quotation marks and citation omitted).

Methods for calculating recoverable losses address concerns raised by the Supreme Court's decision in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005).  In *Dura*, the Supreme Court held that in cases based on a fraud-on-the-market theory, a purchaser of stock at fraudulently inflated prices cannot recover without proving loss caused by the defendant's fraud as opposed to ordinary market forces.  *See Dura*, 544 U.S. at 346.  This is because securities fraud actions are intended "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause."  *Id.* at 345.  The Supreme Court observed that where a purchaser buys shares at an inflated price but "sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Id.* at 342.  The *Dura*-adjusted LIFO method considers losses only with respect to shares retained at the time of a corrective disclosure.  *See Mehedi*, 2022 WL 377406, at *5.  *Dura*-adjusted LIFO partially addresses the concerns raised by *Dura*, since it ignores the portion of the losses that took place before a corrective disclosure and thus likely would not be recoverable.  The Recoverable

United States District Court
Northern District of California

10

Loss method is a variation on *Dura*-adjusted LIFO.  *See id.* at *6.  "The only difference between this approach and the *Dura*-adjusted loss approach is instead of using the actual purchase price of the stock to determine its value before the Corrective Disclosure, the Court uses the stock price just before the Corrective Disclosure."  *Id.*

In their moving papers, both sets of movants rely on the following losses calculated using the LIFO method:

| Movant | Exchange Act Claimed Loss | Securities Act Claimed Loss |
|---|---|---|
| Yang & De Block collectively | $384,062.66 | $516,859.43 |
| Newman & Chetram collectively | $417,162.69 | $380.496.14 |

The parties' moving papers do not state expressly which methodology was used to arrive at these figures, but based on their subsequent briefs and the arguments presented at the hearing, it is clear that the LIFO method was used.  The losses under the Exchange Act are set forth at page 9 of the Yang & De Block moving papers, *see* ECF 27, and page 8 of the Newman & Chetram moving papers, *see* ECF 50.[2]  The losses under the Securities Act are set forth at page 9 of the Yang & De Block moving papers, *see* ECF 27.  Newman & Chetram do not address losses under the Securities Act, *see* ECF 50, and they do not challenge the loss amounts offered by Yang & De Block.

At the hearing, counsel for Newman and Chetram clarified that the movants' total losses cannot be calculated by simply adding Exchange Act losses with Securities Act losses, because there will be some overlap in the losses recoverable under the two Acts.  *See* Hrg. Tr. 22:14-23:13, ECF 72.  Counsel did not provide the Court with specifics as to the extent of that overlap, so the Court cannot determine the movants' approximate losses with precision.  However, while Newman & Chetram's Exchange Act losses exceed those of Yang & De Block by approximately

_____

[2] There is a slight discrepancy of approximately $2.00 in the figures offered by the two sets of movants with respect to Newman & Chetram's Exchange Act losses under the LIFO method.  That discrepancy does not impact the Court's evaluation of the parties' motions.  The Court adopts the Newman & Chetram figure, which is supported by Exhibit B to the Apton Declaration, see ECF 50-3.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   $33,100, Yang & De Block's Securities Act losses exceed those of Newman & Chetram by

2   approximately $136,363.  Whatever the overlap between losses under the two Acts, the Court is

3   satisfied that under the LIFO method Yang & De Block have the greater approximate losses.

4          While both parties focus on economic loss in their moving papers, Yang & De Block

5   provided additional argument on recoverable loss in their opposition to Newman & Chetram's

6   motion.  *See* Yang & De Block Opp. at 6, ECF 56.  The chart at page 6 of Yang & De Block's

7   opposition indicates that under the "Retained Share Loss" method, Newman & Chetram's

8   Exchange Act losses are $315,001.33 (as opposed to $417,162.69 under the LIFO method), and

9   that Yang & De Block's Exchange Act losses are unchanged.[3]  *See* Yang & De Block Opp. at 6,

10  ECF 56.  At the hearing, counsel for Yang & De Block clarified that they used the *Dura*-adjusted

11  LIFO method, meaning that they did not count any losses from stocks that were bought and sold

12  prior to a corrective disclosure or, in other words, that were not held over any corrective

13  disclosure.  *See* Hrg. Tr. 13:5-15:3, ECF 72.  The losses calculated under the *Dura*-adjusted LIFO

14  method confirm the court's conclusion under the LIFO method that Yang & De Block have the

15  greater approximate losses.

16         At the hearing, counsel for Newman & Chetram argued that use of the *Dura*-adjusted

17  LIFO method is not appropriate in this case.  *See* Hrg. Tr. 16:3-17:6, ECF 72.  Counsel pointed out

18  that this case is distinguishable from other cases in which the *Dura*-adjusted LIFO method has

19  been used, because this case involves three corrective disclosures rather than a single corrective

20  disclosure.  *See id.*  Based on Yang & De Block's explanation that they excluded only those shares

21  purchased and sold before any corrective disclosure, it appears that the *Dura*-adjusted LIFO

22  method properly may be used in this case.  Under that method, Yang & De Block clearly have the

23  greater approximately losses.

24         Neither set of movants requested use of the Recoverable Loss method that this Court

25  applied in *Mehedi* and *Enphase*.  *See Mehedi*, 2022 WL 377406, at *6; *Hurst v. Enphase Energy*,

26

27  _____

28  [3] The chart in Yang & De Block's opposition states their LIFO/Retained Share losses as
    $397,876.76, which is slightly higher than the $384,062.66 in LIFO losses stated in their moving
    papers.  This discrepancy does not impact the Court's evaluation of the parties' motions.

Inc., No. 20-CV-04036-BLF, 2020 WL 7025085, at *4 (N.D. Cal. Nov. 30, 2020).  As noted above, the Recoverable Loss method is a variation of the *Dura*-adjusted LIFO method, in which "instead of using the actual purchase price of the stock to determine its value before the Corrective Disclosure, the Court uses the stock price just before the Corrective Disclosure."  *Mehedi*, 2022 WL 377406, at *6.  It may be that the parties believed that use of the Recoverable Loss method would be too complicated in light of the multiple corrective disclosures alleged in this case.  Both *Mehedi* and *Enphase* involved a single corrective disclosure.  *See Mehedi*, 2022 WL 377406, at *5; *Hurst*, 2020 WL 7025085, at *4.  Counsel for Yang & De Block commented during the hearing that "with multiple drops, it gets very confusing if you do it the way where you multiply the shares."  Hrg. Tr. 14:23-25, ECF 72.  Even with multiple disclosures, however, Yang & De Block's counsel argued that their proposed use of *Dura*-adjusted LIFO is appropriate because it applies LIFO but simply excludes the four Newman & Chetram transactions involving shares that were not held over *any* corrective disclosure.  *See id.* at 14:24-15:3.  Counsel stated that the goal was "only excluding shares where clearly there's no loss causation" under *Dura*.  *See id.* at 13:13-14.  The Court finds that on the facts of this case, Yang & De Block's proposed application of the *Dura*-adjusted LIFO method is rational and consistent with the requirements of *Cavanaugh*.  *See Cavanaugh*, 306 F.3d at 730 n.4.

The Court concludes that Yang & De Block have the greater approximate losses under either the LIFO method or the *Dura*-adjusted LIFO method.

### e.       Weighing the *Lax* Factors

Weighing the *Lax* factors, the Court finds that Yang & De Block have the greatest financial interest.  While the first factor slightly favors Newman & Chetram, all of the other factors favor Yang & De Block, including the fourth and most important factor.

### 2.       Rule 23(a) Requirements

The Court next considers whether Yang & De Block have made a prima facie showing that they satisfy the Rule 23(a) requirements of typicality and adequacy.  *See Mersho*, 6 F.4th at 899 ("Once the district court has determined that the movant with the largest stake has made a prima facie showing of adequacy and typicality, that movant becomes the presumptively most adequate

13

plaintiff." (internal quotation marks and citation omitted)).  "Examination of the remaining requirements is deferred until the lead plaintiff moves for class certification."  *Mehedi*, 2022 WL 377406, at *9.

### a. Adequacy

To determine Yang and De Block's adequacy, the Court must resolve two questions:  (1) whether Yang & De Block and their counsel have any conflicts of interest with other class members and (2) whether Yang & De Block and their counsel will prosecute the action vigorously on behalf of the putative class.  *See Mehedi*, 2022 WL 377406, at *9.  The record does not reflect any conflicts of interest.  Moreover, given that Yang & De Block and their counsel got this case moving again after it stagnated following termination of *Boehning*, and the Court is satisfied that Yang & De Block and their counsel will prosecute this action vigorously on behalf of the putative class.  The Court also notes that Yang & De Block have filed a joint declaration committing to fulfill their obligations as co-lead plaintiffs if they are selected.  *See* Joint Decl., ECF 56-1.

### b. Typicality

The Court finds that the claims of Yang & De Block under the Exchange Act and Securities Act are typical of those of the putative class.

### 3. Yang & De Block are the Presumptive Lead Plaintiffs

Based on the above, the Court finds that Yang & De Block are the presumptive lead plaintiffs.

### C. Opportunity to Rebut

In order to rebut this presumption, Newman & Chetram must present proof that Yang & De Block "will not fairly and adequately protect the interests of the class" or are "subject to unique defenses that render [them] incapable of adequately representing the class."  *Mersho*, 6 F.4th at 899.  No such proof has been presented.  Newman & Chetram urge the Court to reject the joint declaration offered by Yang & De Block because it was not filed with their moving papers, and suggest that Yang & De Block acted improperly when they filed their renewed lead plaintiff motion only in the *Hoang* action without giving notice to other class members.  The Court will not reject the declaration, and nothing in the record shows that Yang & De Block had any improper

United States District Court
Northern District of California

1 | intent when the filed their renewed lead plaintiff motion in *Hoang*.

2 |      The Court finds that Newman & Chetram have not presented the type of proof necessary to

3 | rebut the presumption.

4 |      Accordingly, Yang & De Block's motion for appointment as co-lead plaintiffs is

5 | GRANTED and Newman & Chetram's competing motion is DENIED.

6 |      **D.**    **Lead Counsel**

7 |      "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should

8 | generally defer to that choice." *Cohen*, 586 F.3d at 712.  Yang & De Block have selected Glancy

9 | Prongay & Murray LLP and The Rosen Law Firm P.A. to act as co-lead counsel.  The Court has

10 | reviewed the firms' resumes, *see* Linehan Decl. Exhs. D and E, ECF 28-4, 28-5, and is satisfied

11 | that Yang & De Block have made a reasonable choice of counsel.

12 |      The Court APPROVES Yang & De Block's selection of Glancy Prongay & Murray LLP

13 | and The Rosen Law Firm P.A. as co-lead counsel.

**IV.   ORDER**

    (1)    Yang & De Block's motion for appointment as co-lead plaintiffs is GRANTED, and Yang & De Block ARE APPOINTED as Co-Lead Plaintiffs in this case.

    (2)    Glancy Prongay & Murray LLP and The Rosen Law Firm P.A. ARE APPOINTED as Co-Lead Counsel in this case.

    (3)    Newman & Chetram's motion is DENIED.

    (4)    This order terminates ECF 27, 50.

Dated:  May 16, 2022

BETH LABSON FREEMAN
United States District Judge

*United States District Court*
*Northern District of California*

15