**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| YEN HOANG, et al., | Case No. 21-cv-03930-BLF |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND** |
| CONTEXTLOGIC, INC., et al., | [Re: ECF No. 106] |
| Defendants. | |

This is a putative class action for violation of the Securities Act of 1933 ("Securities Act") against ContextLogic, Inc. ("Wish"), certain of its officers and directors, and underwriters of its IPO. Plaintiffs have filed a Second Consolidated Amended Class Action Complaint alleging violations of Sections 11 and 15 of the Securities Act. ECF No. 103 ("SAC"). Wish and its officers and directors ("Wish Defendants") filed a Motion to Dismiss. ECF No. 106 ("Mot."); ECF No. 111 ("Reply"). The underwriters of Wish's IPO ("Underwriter Defendants") joined Wish's motion. ECF No. 107. Plaintiffs oppose the Motion. ECF No. 109 ("Opp."). For the reasons explained below, Wish's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART WITH LEAVE TO AMEND.

I.     **BACKGROUND**

A.     **The Parties**

Defendant Wish is an e-commerce company that operates the Wish platform. SAC ¶¶ 1, 60. The Wish platform enables merchants to sell their products directly to global consumers. *Id.*

Defendant Piotr Szulczewski was Wish's Chief Executive Officer ("CEO") and Chairman of Wish's Board of Directors at all relevant times. *Id.* ¶ 18. Defendant Rajat Bahri was Wish's Chief Financial Officer ("CFO") from 2016 through July 23, 2021. *Id.* ¶ 19. Defendant Brett Just

United States District Court
Northern District of California

United States District Court
Northern District of California

has served as Wish's Chief Accounting Officer ("CAO") since November 2020.  *Id.* ¶ 20.

Defendants Julie Bradley, Ari Emanuel, Joe Lonsdale, Tanzeen Syed, Stephanie Tilenius, and

Hans Tung served as directors on Wish's Board of Directors at the time of its initial public

offering ("IPO").  *Id.*  ¶¶ 21–26. Defendant Jaqueline Reses was identified as an incoming director

of Wish at the time of the IPO and named a member of the Board of Directors on December 18,

2020.  *Id.* ¶ 27.  Collectively these officers and directors are referred to throughout this order as

the "Individual Defendants."  *Id.* ¶ 28.

The Underwriter Defendants are Goldman Sachs & Co. LLC; J.P. Morgan Securities LLC;

BofA Securities, Inc.; Citigroup Global Markets Inc.; Deutsche Bank Securities Inc.; UBS

Securities LLC; RBC Capital Markets, LLC; Credit Suisse Securities (USA) LLC; Cowen and

Company, LLC; Oppenheimer & Co. Inc.; Stifel, Nicolaus & Company, Incorporated; William

Blair & Company, L.L.C.; Academy Securities, Inc.; Loop Capital Markets LLC; and R. Seelaus

& Company, LLC.  *Id.* ¶¶ 34–48.

Lead Plaintiffs Xiaoquan Yang and Alexander De Block's Second Consolidated Class

Action Complaint asserts two counts for violations of securities laws.  *See* SAC.  Count I alleges

violations of Sections 11 of the Securities Act.  *Id.* ¶¶ 119–127.  Count II alleges violations of

Sections 15 of the Securities Act.  *Id.* ¶¶ 128–133.  The complaint names as defendants Wish, 10

individuals, and 15 companies that underwrote Wish's initial public offering (IPO).

### B.    Registration Statement

In its Registration Statement for its Initial Public Offering ("IPO") on December 15, 2020,

Wish repeatedly attributed its growth success to advertising.  SAC ¶¶ 10, 59, 66.  The Registration

Statement represented that Wish materially increased its advertising spending for the first nine

months of 2020 compared to the first nine months of 2019.  *Id.* ¶¶ 69–73.  Defendants also

stressed the importance of "attracting and engaging users," and represented that the Company was

"focused on growing [its] user base around the world, particularly in "key growth markets," or

emerging markets.  *Id.* ¶¶ 2, 63–69.  Thus, Plaintiffs allege, the Registration Statement,

affirmatively created an impression to the investing public that Wish was continuing the same

advertising and marketing efforts that the Company made for the first nine months of 2020 to

grow users worldwide, particularly in emerging markets.  *Id.* ¶ 3.

Despite Defendants' representations in the Registration Statement that Wish had increased its advertising spend for the first nine months of 2020 and continued with acquiring customers particularly in emerging markets, beginning in 4Q 2020, the Company had reduced advertising and its efforts to acquire customers in emerging markets outside of Europe and North America, including India, Brazil, Columbia, and the Philippines.  *Id.* ¶ 73. This reduction caused monthly active users ("MAUs") to materially decline in 4Q 2020.  *Id.*  Later, the Company attributed a 10% year-over-year ("YoY") MAU decline during the fourth quarter to its reduction of advertising and user acquisition efforts in those locations.  *Id.*  Although the Registration Statement disclosed several risk factors that might impact the Company's efforts to acquire users, Plaintiffs allege that Wish failed to warn of the specific risk that due to Wish's reduced advertising spend and user acquisition efforts in emerging markets in 4Q 2020, Wish's performance, particularly MAUs, could be materially adversely impacted.  *Id.* ¶¶ 74–75.

On March 8, 2021, Wish disclosed that in 4Q 2020, its "MAUs declined 10% YoY during Q4 to 104 million, primarily in some emerging markets outside of Europe and North America where Wish temporarily de-emphasized advertising and customer acquisition as the company worked through logistics challenges it faced earlier in the year."  *Id.* ¶ 107.  On the same day, a Bloomberg article noted the mixed information in Wish's results of an above-estimate revenue forecast for the ongoing 1Q 2021 and the material MAU decline in 4Q 2020.  *Id.* ¶ 108. At the earnings call held the same day, CFO Bahri was asked to provide more details for "the pullback that you did on advertising and customer acquisition in some of those emerging markets and how we should think about the timing as you bring that back on."  *Id.* ¶ 109. In response, CFO Bahri stated, "the countries like – these emerging markets, the days to delivery was significantly large and we just felt it's not right to invest in these businesses if the consumers churn, what's the point of investing. So maybe much all of the decline was driven by countries like India, Philippines, Colombia, some Brazil all those countries wherever be it."  *Id.*  Plaintiffs allege that this "de-emphasizing" strategy continued to materially impact the Company's performance for the next two quarters.  *Id.* ¶¶ 8, 110.

United States District Court
Northern District of California

On May 12, 2021, Wish announced its 1Q 2021 financial results, disclosing, again, that Wish's MAUs declined by an additional 7%, and attributed the additional decline, again, to its de-emphasizing strategy in some emerging markets.  *Id.* ¶¶ 110.  On this news, Wish's stock price fell by more than 29%.  *Id.*

**C.     Previous Motion**

This is the Wish Defendants' second Motion to Dismiss.  The Court granted the Wish Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint ("CAC") on March 10, 2023.  ECF No. 98.

**D.     Alleged False Statements**

At issue are five statements alleged by Plaintiffs to be false or misleading.  *See* SAC; ECF 103-1.

**1.   Statement One**

Plaintiffs allege that the following statement (Statement One) about Wish's growth strategy was false or misleading:

> **Our Growth Strategy**
>
> We leverage our data and unique insights on merchants and users to extend our platform outside of our core business and drive additional growth opportunities. Our data science capabilities are a unique advantage and core to the operations of our business.
>
> **Grow Our Base of Users**
>
> - **Continue to Acquire New Users.  *We are focused on growing our user base around the world.*** We currently serve users in over 100 countries.  We estimate that there are over 1 billion households with income of less than $75,000 around the world, excluding China and India.  We intend to grow our user base by cost effectively reaching new users through a combination of data-driven and targeted advertising campaigns, word of mouth and other marketing efforts, as well as increasing our brand awareness.
>   …
> - **Expand Geographically.  *We will continue to expand our global footprint and enter new geographies and acquire new users in those markets.*** In particular, countries in Africa, Latin America, and Eastern Europe are key growth markets with large and growing populations as well as a significant portion of the population with lower average household incomes.  Within these markets, the proliferation of consumer mobile use and improvements in internet infrastructure will

4

1

2

3

> help us establish and grow our business.  In addition, our investments in our own logistics network will help us achieve better breadth and density of coverage in our newer regions and countries, enabling a better user experience and localized, high-quality delivery and customer service.

4   SAC ¶¶ 66, 96 (quoting Registration Statement) (emphasis in original).

5   ### 2.  Statement Two

6   Plaintiffs further allege that the following statement about Wish's efforts to acquire and

7   engage users was false or misleading:

8

9   > ***Our efforts to acquire new users and engage existing users may not be successful or may be more costly than we expect, which could prevent us from maintaining or increasing our revenue.***

10

11

12

13

14

15

16

17

18

19

20

21

> Our success depends on our ability to attract new users and engage existing users in a cost-effective manner.  In order to acquire and engage users, we must, among other things, promote and sustain our platform and provide high-quality products, user experiences, and service.  Our marketing efforts currently include various initiatives and consist primarily of digital marketing on a variety of social media channels, such as Facebook, search engine optimization on websites, such as Google, Bing, and Yahoo!, various branding strategies, such as our relationship with the Los Angeles Lakers and social influencers, and mobile "push" notifications, text messaging, and email.  For the year ended December 31, 2019 and the nine months ended September 30, 2020, we spent $1.5 billion and $1.1 billion on sales and marketing, representing 78% and 64% of our revenue, respectively.  ***We anticipate that sales and marketing expenses will continue to comprise a substantial majority of our overall operating costs for the foreseeable future.***  We have historically acquired a significant number of our users through digital advertising on platforms and websites owned by Facebook and Google, which may terminate their agreements with us anytime. ***Our investments in sales and marketing may not effectively reach potential users, potential users may decide not to buy through us, or user spend on our platform may not yield the intended return on investment, any of which could negatively affect our financial results.***

22

23

> Many factors, some of which are beyond our control, may reduce our ability to acquire, maintain and further engage with users, including those described in this "Risk Factors" section and the following:

24

25

26

27

28

> - system updates to app stores and advertising platforms such as Facebook and Google, including adjustments to algorithms that may decrease user engagement or negatively affect our ability to target a broad audience;
> - changes in advertising platforms' pricing, which could result in higher advertising costs;
> - changes in digital advertising platforms' policies, such as those of Facebook and Google, that may delay or prevent us from advertising through these channels, which could result in

United States District Court
Northern District of California

5

reduced traffic to and sales on our platform;

- changes in search algorithms by search engines;
- inability of our email marketing messages to reach the intended recipients' inbox;
- ineffectiveness of our marketing efforts and other spend to continue to acquire new users and maintain and increase engagement with existing users;
- decline in popularity of, or governmental restrictions on, social media platforms where we advertise;
- the development of new search engines or social media sites that reduce traffic on existing search engines and social media sites;
- consumer behavior changes as a result of COVID-19; and
- products listed by merchants on our platform that are the subject of adverse media reports, regulatory investigations, or other negative publicity.

***As a result of any of these factors or any additional factors that are outside of our control, if we are unable to continue acquiring new users or increasing engagement with existing users, it could have a material adverse effect on our business, financial condition, results of operations, and prospects.***

SAC ¶ 74, 98 (quoting Registration Statement) (emphasis in original).

### 3. Statement Three

Plaintiffs further allege that the following statement (Statement Three) about Wish's growth strategy was false or misleading:

**Our Growth Strategy**

**Grow Our Base of Users**

- Continue to Acquire New Users. ***We are focused on growing our user base around the world.*** We currently serve users in over 100 countries. We estimate that there are over 1 billion households with income of less than $75,000 around the world, excluding China and India. (Emphasis added).
- Drive User Conversion. We have over 12 million monthly active buyers and over 100 million monthly active users on the platform. We will continue to drive greater user engagement and convert more active users on our platform to become active buyers by utilizing our data science and introducing more interactive and entertaining features.
- Drive Profitable Lifetime Value from Existing Users. We plan to continue to improve the engagement and monetization of our users on our platform to maximize their lifetime value. We plan to achieve this goal by:
  - o Using our data science to drive personalization of our platform;
  - o Continuing to offer attractive discounts and value, an entertaining user experience, and robust user-generated content; and
  - o Improving our ease of use by investing in our user

United States District Court
Northern District of California

support and logistics infrastructure to enable faster deliveries and localization of our platform.

Expand Geographically. ***We intend to continue to expand our global footprint and enter new geographies and acquire new users in those markets.***

SAC ¶ 100 (quoting Registration Statement) (emphasis in original).

### 4. Statement Four

Plaintiffs further allege that the following statement (Statement Four) about potential fluctuations in quarterly and annual operating results was false or misleading:

> ***Our quarterly and annual operating results may fluctuate, which could cause our stock price to decline.***
>
> Our quarterly and annual operating results may fluctuate for a variety of reasons, many of which are beyond our control. These reasons include those described in this "Risk Factors" section as well as the following:
>
> - our user acquisition strategies;
> - selling prices on our platform and the percentage of revenue we retain from the sale of products;
> - mix of products listed on our platform;
> - fraud, including the sale of counterfeit goods, and refunds, including our response to these areas;
> - fraud, including the sale of counterfeit goods, and refunds, including our response to these areas;
> - the level of merchant advertising on our platform;
> - disruptions in supply or shipment of products listed on our platform, especially from China where most of our merchants are currently located;
> - the actions of app stores and advertising platforms such as Facebook and Google;
> - seasonality;
> - fluctuations in exchange rates;
> - the amount and timing of our other operating expenses;
> - the impact of competitive developments and our response to those developments;
> - changes in carrier policies and pricing and resulting higher logistics costs;
> - actual or perceived disruptions or defects in our platform, such as data security breaches or outages;
> - changes in laws and regulations that impact our business;
> - changes in tax laws in the jurisdictions in which we operate; and
> - general political, economic, and market conditions, particularly those affecting our industry.
>
> Fluctuations in our quarterly and annual operating results may cause those results to fall below the expectations of analysts or investors, which could cause the price of our Class A common stock to decline. Fluctuations in our results could also cause a number of other

problems. For example, analysts or investors might change their models for valuing our Class A common stock, we could experience short-term liquidity issues, our ability to retain or attract key personnel may diminish, and other unanticipated issues may arise.

In addition, we believe that our quarterly and annual operating results may vary in the future and that period-to-period comparisons of our operating results may not be meaningful. For example, our historical growth may have overshadowed the seasonal effects on our historical operating results. These seasonal effects may become more pronounced over time, which could also cause our operating results to fluctuate. You should not rely on the results of one quarter or one year as an indication of future performance.

SAC ¶ 102 (quoting Registration Statement) (emphasis in original).

### 5.   Statement Five

Plaintiffs further allege that the following statement (Statement Five) about Wish's digital marketing strategies was false or misleading:

**Invest in our sales and marketing engine.** We have made significant investments in our data science which underpins all aspects of our operations including marketing and user acquisition. By leveraging our unique and scaled data set and algorithms, ***our goal is to execute cost-effective and successful digital marketing strategies to acquire new users and re-engage existing users on the Wish platform.*** We consider our user acquisition expertise a strong competitive advantage and have invested in this capability over time to continue to drive user and revenue growth. ***We will need to continue to invest in our marketing efforts to attract new users and increase user engagement.***

SAC ¶ 104 (quoting Registration Statement) (emphasis in original).

## II.   LEGAL STANDARD

"A Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

(internal quotation marks and citations omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

Section 11 of the Securities Act creates a private remedy for any purchaser of a security if "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading . . . ."  15 U.S.C. §77k(a).  "The section was designed to assure compliance with the disclosure provisions of the Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering."  *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859 (9th Cir. 2013).  "As long as a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his *prima facie* case."  *Id.*; 15 U.S.C. §77k(b).

"Section 11 thus creates two ways to hold issuers liable for the contents of a registration statement—one focusing on what the statement says and the other on what it leaves out."  *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 179 (2015).  "Either way, the buyer need not prove (as he must to establish certain other securities offenses) that the defendant acted with any intent to deceive or defraud."  *Id.*  "Liability against the issuer of a security is virtually absolute, even for innocent misstatements."  *Hildes*, 734 F.3d at 859.  Additionally, "Section 11 lacks a scienter requirement."  *Id.* at 860.  Thus, "[t]he standard for Section 11 falsity is more lenient than pleading a Rule 10(b)(5) violation" pursuant to the Securities Exchange Act of 1934 ("Exchange Act").  *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1257 (N.D. Cal. 2019).  "When a Section 11 complaint does not sound in fraud, it must only meet Rule 8(a)'s ordinary notice pleading requirements."  *Id.*  Accordingly, "Section 11 places a relatively minimal burden on a plaintiff."  *Hildes*, 734 F.3d at 859.

\\

\\

### III.    DISCUSSION

#### A.    Judicial Notice

A court generally cannot consider materials outside the pleadings on a Motion to Dismiss for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).  A court may, however, consider items of which it can take judicial notice without converting the motion to dismiss into one for summary judgment.  *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  A court may additionally take judicial notice of "'matters of public record' without converting a Motion to Dismiss into a motion for summary judgment."  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).  Under the incorporation by reference doctrine, courts may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original).

Defendants seek notice of four exhibits:

1. Exhibit 1, excerpts of ContextLogic's Amended Registration Statement on Form S-1, filed with the U.S. Securities and Exchange Commission ("SEC") on December 7, 2020.  ECF No. 106-1 ("Ex. 1").

2. Exhibit 2, ContextLogic's Current Report on Form 8-K, filed with the SEC on March 8, 2021.  ECF No. 106-1 ("Ex. 2").

3. Exhibit 3, a transcript of ContextLogic's earnings call for the fourth quarter of 2020, dated March 8, 2021.  ECF No. 106-1 ("Ex. 3").

4. Exhibit 4, a Bloomberg terminal printout of ContextLogic's stock price between March 1 and March 30, 2021.  ECF No. 106-1 ("Ex. 4").

ECF No. 106-2.  Defendants also note that the Court previously took judicial notice of Exhibits 1

1  through 3.  *Id.*; ECF No. 98 at 9−10.  Plaintiffs do not oppose Defendants' requests for judicial

2  notice.

3       Separately, Plaintiffs seek judicial notice of Wish's Q1 2021 Shareholder Letter, posted on

4  May 12, 2021.  Opp. at 2; ECF No. 110-1 ("Shareholder Letter").  Defendants challenge

5  Plaintiffs' use of the Shareholder Letter, noting that certain facts were "not [] alleged in the SAC."

6  Mot. at 9.

7       The Court grants judicial notice of Defendants' four exhibits.  *See Metzler Inv. GMBH v.*

8  *Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (granting judicial notice of

9  publicly available financial documents such as SEC filings); *Heliotrope Gen., Inc. v. Ford Motor*

10  *Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (granting judicial notice of publicly available articles

11  or other news releases of which the market was aware).  The Court does not take notice of the

12  truth of any of the facts asserted in these documents.  *See City of Sunrise Firefighters' Pension*

13  *Fund v. Oracle Corp.*, 2019 WL 6877195, at *23 (N.D. Cal. Dec. 17, 2019).

14       The Court grants judicial notice of Plaintiffs' exhibit, but notes that the SAC makes no

15  mention of this Shareholder Letter or its contents, and is thus beyond the complaint.  *See*

16  *Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining

17  the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a

18  plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to

19  dismiss." (emphasis in original)).  The Court relies only on the SAC for Plaintiffs' allegations.

20       **B.    Alleged False Statements**

21       "To prevail on a Section 11 claim, a plaintiff must demonstrate (1) that the registration

22  statement contained a misrepresentation or omission; and (2) that the misrepresentation or

23  omission was material."  *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 914 (N.D. Cal. 2015)

24  (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir.2005); *see also In re Dropbox Sec.*

25  *Litig.*, No. 19-CV-06348-BLF, 2020 WL 6161502, at *5 (N.D. Cal. Oct. 21, 2020).  A

26  misrepresentation or omission is material where it "would have misled a reasonable investor about

27  the nature of his or her investment."  *Daou*, 411 F.3d at 1027.

28       Plaintiffs allege that five statements were false or misleading and that Wish failed to

United States District Court
Northern District of California

disclose (pursuant to Item 105) that investment in it was speculative or risky.  The Court addresses each statement individually except Statements One and Three, which it addresses together because they share the material language at issue, then finally the Item 105 disclosure.

### 1.  Statements One and Three: Growth Strategy

Plaintiffs allege that Wish's disclosures about its growth strategy (Statements One and Three) are false or misleading.  Specifically, Plaintiffs emphasize (and Defendants challenge) two shorter statements shared by Statements One and Three.  The first shared statement is "[w]e are focused on growing our user base around the world."  SAC ¶ 66, 96 (Statement One); SAC ¶ 100 (Statement Three).  The second shared statement is "We will continue to expand our global footprint and enter new geographies and acquire new users in those markets."  SAC ¶ 66, 96 (Statement One); SAC ¶ 100 (Statement Three, replacing "will continue" with "intend to continue").  The Court addresses these two statements in turn.

#### a.  Statements One and Three: "We are focused on growing our user base around the world"

First, Plaintiffs allege that Wish's statement, "[w]e are focused on growing our user base around the world," was false based on Wish's March 8, 2021 disclosures that "[d]uring the holiday season," Wish "temporarily de-emphasized advertising and customer acquisition" in India, the Philippines, Colombia, and Brazil, and "expect[ed] to again engage with these markets" in the coming months.  SAC ¶¶ 96, 100, 107–109; *see also* SAC ¶¶ 97, 101; Ex. 2 at 6; Ex. 3 at 7, 9; SAC, Ex. 1 at 1, 5.

Defendants challenge this allegation, arguing that there are no facts in either the SAC or the Registration Statement to suggest that Wish's business was so heavily dependent on the four countries (India, the Philippines, Colombia, and Brazil) that a "temporary" reduction in advertising spend meant it abandoned its "growth strategy" and was no longer "focused on growing [its] user base."  Mot. at 8 (quoting SAC ¶¶ 96, 100).  Defendants also argue that Plaintiffs' allegation that Wish abandoned its marketing strategy is undercut by the fact that Wish's advertising spend in Q4 2020 was the highest reported quarter ever for the Company and Plaintiffs' own allegations that "Wish was pouring a couple of million dollars a day into ads."

*Compare* Ex. 2 at 12 (Q4 2020 spend was $583 million), *with* Ex. 1 at 110 (previous quarterly spend ranged from $257 to $468 million); Mot. at 9 (quoting SAC ¶¶ 93−94).

Plaintiffs respond that Defendants' argument that Wish increased total advertising spend globally is "bizarre" and "irrelevant." Opp. at 12. Plaintiffs argue that the statement is misleading because Wish's reduced advertising and customer acquisition efforts "in some emerging markets outside of Europe and North America" "primarily" caused Wish's MAUs to have materially "declined 10% [year-over-year] during Q4." *Id.* (quoting SAC ¶¶ 107, 109).

The Court agrees with Defendants. Reduced advertising spend in certain countries is not inconsistent with Wish's plan to grow its user base around the world. *See In re Read-Rite Corp.*, 335 F.3d 843, 846, 848 (9th Cir. 2003) (affirming dismissal in PSLRA action where defendant "did not make . . . statements that were contradictory or necessarily inconsistent with allegedly false public statements"), *abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008); *Golubowski v. Robinhood Markets, Inc.*, 2023 WL 1927616, at *10 (N.D. Cal. Feb. 10, 2023) (statement about growth strategy not misleading because "it can be simultaneously true that [defendant] faced *some* customer service controversies while overall building a trusted brand. . ." (emphasis in original)). In light of record global advertising spend, an advertising spend decrease in certain countries is not on its own inconsistent with Wish's disclosed "focus" on "growing [its] user base around the world," to the point that it "would have misled a reasonable investor about the nature of his or her investment." *Daou*, 411 F.3d at 1027. Thus, the Court finds that Wish's disclosure that it was "focused on growing [its] user base around the world" is not false or misleading.

> b. Statements One and Three: "We will continue" and "We intend to continue" "to expand our global footprint and enter new geographies and acquire new users in those markets"

Defendants challenge a second statement shared by Statements One and Three. Plaintiffs allege that Wish's disclosures about its plans to "continue to expand our global footprint and enter new geographies"—including "in Africa, Latin America, and Eastern Europe"—were false for the same reason that Wish "temporarily de-emphasized advertising and customer acquisition" in India, the Philippines, Colombia, and Brazil, and "expect[ed] to again engage with these markets" in the

1   coming months.  SAC ¶¶ 66, 96; SAC, Ex. 1 at 1, 5.

2       Defendants make two challenges to the statement.  First, Defendants argue that the

3   "statement is discussing *new* markets that Wish plans to enter, so it cannot be rendered false by

4   omitting the alleged de-emphasis of certain *current* markets serviced by Wish."  Mot. at 9 (citing

5   SAC ¶¶ 96−97, 100−101) (emphasis in original).  Second, Defendants claim that this disclosure is

6   a forward-looking statement protected under the "bespeaks caution" doctrine.  *Id.* at 9–10.

7       Plaintiffs respond that Defendants' interpretation of the statement is self-serving, and that

8   they are misleading when read in the light most favorable to Plaintiffs.  Opp. at 12.  Plaintiffs also

9   reject Defendants' invocation of the bespeaks caution doctrine because the disclosures are not

10   forward-looking and did not specifically warn of the magnitude of the risk.  *Id.* at 13.

11       The Court agrees with Defendants.  Statements One and Three disclosed that Wish "will

12   continue to expand [its] global footprint and enter new geographies and acquire new users in those

13   markets."  SAC ¶¶ 96, 100 (similarly stating "[w]e intend to continue").  Statement One continues,

14   "[i]n particular, countries in Africa, Latin America, and Eastern Europe are key growth markets."

15   *Id.* ¶ 96.  Thus, of the four countries listed by CFO Bahri on the investment call, *id.* ¶ 110, only

16   Brazil and Colombia are in "key growth markets."  Allegations of reduced advertising spend in

17   two countries out of "over 100 countries," *id.* ¶ 96, particularly in light of Wish's record high

18   global ad spend, is not inconsistent with vague and general goals to expand global footprint, enter

19   new geographies, and acquire new users.  *See Read-Rite*, 335 F.3d at 846, 848; *Robinhood*, 2023

20   WL 1927616, at *10.  Furthermore, Plaintiffs have not alleged that Brazil and Colombia are "new"

21   markets.  Therefore, advertising decreases in those countries are not sufficiently connected to

22   Wish's disclosure that it will "expand [its] global footprint and enter new geographies" in such a

23   way that it would have misled a reasonable investor.  *Daou*, 411 F.3d at 1027; *see also Hong v.*

24   *Extreme Networks, Inc.*, 2017 WL 1508991, at *15 (N.D. Cal. Apr. 27, 2017) (falsity inadequately

25   alleged in 10(b) and 10b-5 claims where "the reasons Plaintiffs offer as to why the statements are

26   false or misleading bear no connection to the substance of the statements themselves").  Thus, the

27   Court concludes that Plaintiffs have failed to allege that this statement is false or misleading.

28       Having found that Statements One and Three are not false or misleading, the Court need

United States District Court
Northern District of California

14

not address Defendants' "bespeaks caution" doctrine arguments.

The Court finds that Plaintiffs have failed to allege that Statements One and Three—"We are focused on growing our user base around the world" and that Wish "will continue" and "intends to continue" "to expand our global footprint and enter new geographies and acquire new users in those markets" —were false or misleading.  Furthermore, because the statements point to vague and general goals of global growth and acquiring users, no additional facts would cure Plaintiffs' allegation, nor have Plaintiffs suggested they could amend.  Thus, Defendants' Motion to Dismiss Plaintiffs' claims pertaining to Statements One and Three is granted without leave to amend.

### 2.  Statement Two: Acquiring Users

"[A] company may make a materially misleading statement when it 'speaks entirely of as-yet-unrealized risks' when the risks have 'already come to fruition.'"  *In re Facebook, Inc. Sec. Litig.*, No. 22-15077, 2023 WL 8365362, at *9 (9th Cir. Dec. 4, 2023) (quoting *Berson v. Applied Signal Tech.*, 527 F.3d 982, 987 (9th Cir. 2008)); *see also In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 702–05 (9th Cir. 2021).

Plaintiffs allege that Statement Two was "incomplete, inaccurate and materially false" for failing to disclose Wish's de-emphasis strategy.  SAC ¶ 98.  Statement Two discloses that Wish's "efforts to acquire new users and engage existing users *may not be successful* or *may be more costly* than we expect, which could prevent us from maintaining or increasing our revenue." *Id.* ¶ 98 (emphasis added).  The statement continues that "sales and marketing may not effectively reach potential users, potential users may decide not to buy through us, or user spend on our platform *may not yield the intended return on investment*, any of which could negatively affect our financial results." *Id.* (emphasis added).  The Statement lists several risk factors, then states:

> As a result of any of these factors or any additional factors that are outside of our control, *if we are unable to continue acquiring new users or increasing engagement with existing users*, it could have a material adverse effect on our business, financial condition, results of operations, and prospects.

*Id.* (emphasis added).  Plaintiffs allege that the risks had already come to fruition, noting that Wish eventually disclosed on a Form 8-K on March 8, 2021 that MAUs declined year-over-year in Q4

United States District Court
Northern District of California

2021, "primarily in some emerging markets outside of Europe and North America where Wish temporarily de-emphasized advertising and customer acquisition." SAC ¶ 107. Plaintiffs add that CFO Bahri said in the investor call, also on March 8, 2021, that the pullback on advertising and customer acquisition in "emerging markets . . . India, Philippines, Colombia, [and] Brazil" was because "it's not right to invest in these businesses if the consumers churn." SAC ¶ 109. Plaintiffs allege that Statement Two was "materially false and misleading because it failed to disclose that starting from the beginning of the fourth quarter of 2020, Wish reduced advertising spend and user acquisition efforts in emerging markets." SAC ¶¶ 98−99. Plaintiffs allege that the omission, coupled with Wish's disclosures that "Wish had increased its advertising spend . . . in the first nine months of [] 2020" and "was continuing to advance its goal to expand users," allegedly "created a false impression . . . that Wish was continuing its advertising spending and marketing efforts in emerging markets." SAC ¶ 99.

Defendants argue that the risk factor did not create an impression that materially differed from reality. Defendants specifically note that Wish's advertising spend in Q4 2020 was the highest it had ever been, Wish's MAUs in Q4 2020 increased quarter-over-quarter, and Wish had reported its quarterly advertising spend in the two years leading up to the IPO, which showed that Wish's advertising spend fluctuated by quarter. Mot. at 10−11; *see* Ex. 1 at 17, 110. Defendants also argue that the disclosures did not bar Wish from deciding whether to increase or decrease its advertising spending. *Id.* at 11 (citing SAC ¶¶ 98−99).

Plaintiffs respond that the disclosures "omitted then-existing material facts," which "created a false impression that Wish was continuing its advertising spending and marketing efforts in emerging markets in 4Q 2020, when in fact, the Company had reduced its efforts to acquire users in emerging markets." Opp. at 14. Plaintiffs contend that the risk disclosures were false and misleading for failing to inform the investing public of: "(i) reduced ad spend in the emerging markets; (ii) materially declining MAUs intra-quarter; and (iii) as a result, a specific material risk that the 'de-emphasizing' strategy leaving the 'large and growing populations' in emerging markets would likely cause Wish's operating results, including MAUs, to materially decline in 4Q 2020 and in the near future." *Id.* Plaintiffs argue that Wish's" generic risk

1  disclosures were misleading because 'they disclosed a risk in the abstract but omitted the fact that

2  it had already come to fruition.'" *Id.* (quoting *Cutler v. Kirchner*, 696 F. App'x 809, 813 (9th Cir.

3  2017)).

4      The Court first addresses the parties dispute over whether MAUs increased or decreased in

5  the fourth quarter of 2020.  Defendants state that "Wish's MAUs in Q4 2020 increased quarter-

6  over-quarter."  Reply at 5*; see also* Order at 18.  Defendants also argue that to the extent Plaintiffs

7  claim that Wish should have disclosed that "MAUs [] materially decline[d] in the fourth quarter,"

8  the Court already rejected this theory.  Mot. at 12 (quoting SAC ¶ 103).  The Court notes that it

9  had previously rejected a "blanket assertion that MAUs declined in the third and fourth quarters of

10  2020."  Order at 18.  However, the SAC now alleges a different decline, namely that Wish's

11  MAUs "declined 10% [year-over-year] during Q4."  SAC ¶¶ 107 (quoting Wish's March 8, 2021

12  Form 8-K).  The Court finds that the SAC adequately alleges the year-over-year decline.

13      Next, the Court addresses Plaintiffs claim that the disclosed risks had already come to

14  fruition.  *Alphabet* and *Facebook* are instructive because in both cases, the alleged false statements

15  warned of risks that had already come to pass.  *Facebook*, 2023 WL 8365362, at *9 (disclosure

16  describing "third parties improperly accessing and using Facebook users' data as purely

17  hypothetical" was false in light of internal knowledge it had happened); *Alphabet*, 1 F.4th at 695

18  (security or privacy risks that "could" or "may" happen were false in light of internal knowledge

19  of the bug).

20      *Facebook* involved Cambridge Analytica, a British political consulting firm that "created a

21  database of information about American voters by harvesting their Facebook data."  2023 WL

22  8365362, at *4.  The shareholder plaintiffs alleged that "Facebook was aware of Cambridge

23  Analytica's misconduct before February 2017, so Facebook's statements about risk management

24  'directly contradict[ed]' what the company knew when it filed its 2016 10-K with the SEC."  *Id.* at

25  *9.  The Ninth Circuit agreed, holding that shareholders "adequately pleaded falsity as to the

26  statements in Facebook's 2016 10-K that represented the risk of third parties improperly accessing

27  and using Facebook users' data as purely hypothetical."  *Id.*

28      In *Alphabet*, "internal Google investigators had discovered a software glitch in the

United States District Court
Northern District of California

17

1   Google+ social network that had existed" for three years whereby "developers could collect

2   certain users' profile data" such as "email addresses, birth dates, gender, profile photos, places

3   lived, occupations, and relationship status" "even if those users had relied on Google's privacy

4   settings to designate such data as nonpublic." 1 F.4th at 695.  Despite internal knowledge of the

5   bug, Alphabet filed a Form 10-Q that "incorporated the risk disclosures from Alphabet's 2017 10-

6   K and made no disclosure about the Privacy Bug." *Id.* at 696.  The Ninth Circuit held that the

7   "complaint plausibly allege[d] that Alphabet's omission was material" because "Alphabet's risk

8   disclosures in the 2017 10-K warned of the harms that could follow from the detection and

9   disclosure of security vulnerabilities, including public concerns about privacy and regulatory

10   scrutiny." *Id.* at 703.  The court also found that "Alphabet's warning in each Form 10-Q of risks

11   that 'could' or 'may' occur is misleading to a reasonable investor when Alphabet knew that those

12   risks had materialized." *Id.* at 704.

13       Statement Two similarly warns of risks that "may" occur that Plaintiffs allege had already

14   come to pass.  Statement Two discloses that Wish's "efforts to acquire new users and engage

15   existing users ***may not*** be successful or may be more costly than we expect," and "efforts ***may not***

16   yield the intended return on investment."  SAC ¶ 98 (emphasis added).  The Statement discloses

17   that, due to the risk factors, "***if*** we are unable to continue acquiring new users or increasing

18   engagement with existing users, it could have a material adverse effect on our business, financial

19   condition, results of operations, and prospects."  *Id.* (emphasis added).  Plaintiffs allege that these

20   risks had come to pass; MAUs declined year-over-year in Q4 2020 and CFO Bahri attributed some

21   of the decrease to reduced advertising spend in emerging markets.  *Id.* ¶¶ 107–110.

22       Plaintiffs also allege that Defendants were aware of these risks before the release of the

23   Registration Statement.  The SAC states that employees at Wish including Defendant

24   Szulczekewski and Defendant Bahri had access to MAU and advertising spend data in real time

25   and Defendant Szulczekewski discussed MAUs on a daily basis.  SAC ¶¶ 79–92; ECF No. 103-2

26   (redline comparing CAC and SAC) ¶¶ 79–80 (according to FE1, Wish utilized Looker, Tableau

27   and Google Sheets dashboards to monitor MAUs and advertising spend in real time), ¶ 85

28   ("decreasing advertising specifically in some emerging markets outside of Europe and North

18

1    America correlated directly to a material decrease in user acquisitions"), ¶ 86 ("[Defendant]

2    Szulczekewski discussed advertising spend daily over Slack" and "Defendant Bahri worked

3    closely with Defendant Szulczekewski on all aspects of the Company's advertising spend"), ¶ 92

4    ("[e]veryone in the Company had the Dashboard on their computer screen that provided daily

5    updates on MAU, [Gross Merchandise Value] and other data, which were easily accessed").

6         Thus, despite the Registration Statement's hypothetical language that efforts "may not be

7    successful," "may be more costly," and "may not yield the intended return on investment," the

8    March 2021 statements and disclosures, together with allegations of Defendants real-time

9    knowledge during Q4 2021 support an allegation that Defendants knew that efforts to acquire and

10   engage users were *already* proving unsuccessful, proving costly, and not yielding the return on

11   investment. *Facebook*, 2023 WL 8365362, at *9; *Alphabet*, 1 F.4th at 695.

12        Defendants' argument that the Registration Statement discloses that Wish could change

13   how it spends money on advertisements fails. As Defendants note, Wish disclosed that in 2019

14   there was a "decrease in sales and marketing expenses [that] consisted primarily of reductions to

15   advertising spend, due to our intentional moderation of user acquisition spend resulting from our

16   focus on the launch of the logistics platform." Ex. 1 at 106; *see also id.* at 102 ("The increase in

17   sales and marketing expenses consisted primarily of an increase in advertising spend, as we re-

18   focused on growth after we intentionally moderated user acquisition spend temporarily to focus on

19   the launch of the logistics platform in the first half of 2019."). But these statements did not

20   disclose that Wish's advertising spend was subject to reduction and moderation in Q4 2020, they

21   merely summarize past reductions and moderations to advertising spend. The statements make no

22   affirmative disclosure that advertising spend is being reduced or moderated in Q4 2020, and thus

23   do not support Defendants' argument that Wish disclosed that it could moderate or reduce

24   advertising spend. *See Cutler v. Kirchner*, 696 F. App'x at 813; *Alphabet*, 1 F.4th at 704.

25        The Court finds that Plaintiffs have adequately alleged that Statement Two— "efforts to

26   acquire new users and engage existing users may not be successful"—was false or misleading.

27   Thus, Defendants' Motion to Dismiss Plaintiffs' claims pertaining to Statement Two is denied.

28   \\

United States District Court
Northern District of California

### 3.   Statement Four: Fluctuation of Quarterly and Annual Operating Results

Plaintiffs allege that Wish's risk disclosure that its "quarterly and annual operating results may fluctuate, which could cause our stock price to decline" (Statement Four) was materially false and misleading because it "failed to completely inform the investing public that starting from the beginning of the fourth quarter of 2020, the Company had reduced advertising in India, Brazil, the Philippines and other emerging market countries outside of Europe and North America, causing MAUs to materially decline in the fourth quarter."  SAC ¶ 102–103.

Defendants argue that this risk factor is not actionable because it addressed the very risks that Plaintiffs say should have been disclosed.  Mot. at 12.

Plaintiffs respond that the purported risk factor is too general and boilerplate.  Opp. at 16. Plaintiffs also argue that the warned of risks already came to fruition and that "cautionary words about future risk cannot insulate from liability the failure to disclose that the risk has transpired." Opp. at 16–17 (quoting *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1178 n.62 (C.D. Cal. 2008)).  Plaintiffs again invoke *Alphabet* and *Facebook* for the proposition that, "if you discuss a risk and a result . . . if the cause occurs, you must disclose it."  Hearing Tr. 25:12–14. With respect to MAUs, Plaintiffs argue that Defendants "were duty bound to disclose the material risk of performance decline attendant to Wish's reduced advertising spend and customer acquisition efforts in emerging markets, a theory the Court found could be actionable."  Opp. at 17 (citing Order at 23, ECF No. 110-2 ("Sams Decl., Ex. 2") at 15).

The Court agrees with Defendants.  Statement Four discloses that operating results may fluctuate and lists a variety of reasons, among them "the amount and timing of our other operating expenses" and "our user acquisition strategies."  SAC ¶ 102; *see also* Ex. 1 at 24.  As an initial matter, the term "fluctuates" is vague enough that a company's price is arguably always fluctuating.  Thus, a disclosure that a stock price may fluctuate hardly "create[s] an impression of a state of affairs that differs in a material way from the one that actually exists."  *Costanzo v. DXC Technology Company*, 2021 WL 5908385, at *12 (N.D. Cal. Dec. 14, 2021).  Furthermore, as Defendants note, Wish had reported its quarterly advertising spend in the two years leading up to the IPO, which showed that Wish's advertising spend fluctuated by quarter.  Mot. at 10–11.  Thus,

the Registration Statement disclosed that fluctuation was a present risk.  *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998) (affirming dismissal where "the risks were completely disclosed"); *Olkey v. Hyperion 1999 Term Tr., Inc.*, 98 F.3d 2, 5 (2d Cir. 1996) (affirming dismissal where "[t]he prospectuses warn investors of exactly the risk the plaintiffs claim was not disclosed").  Because fluctuations are ever-present and the Registration Statement discloses past fluctuations, the Court finds that Statement Four discloses the risk of fluctuation as a present risk, not a hypothetical.  Thus, Statement Four is distinguishable from Statement Two, where Wish warned that "efforts to acquire new users and engage existing users *may not be successful,*" SAC ¶ 102, as if the risks were "as-yet-unrealized," which Plaintiffs allege "directly contradict" what Wish employees and executives knew had already come to pass.  *Facebook*, 2023 WL 8365362, at *9.  Plaintiffs allege no such contradictions in Statement Four.

The Court finds that Plaintiffs have failed to allege that Statement Four—"quarterly and annual operating results may fluctuate" —was false or misleading.  Furthermore, because the statement warns only of vague and ever-present fluctuations in operating results, no additional facts would cure Plaintiffs' allegation, nor have Plaintiffs suggested otherwise.  Thus, Defendants' Motion to Dismiss Plaintiffs' claims pertaining to Statement Four is granted without leave to amend.

### 4.  Statement Five: Investing in Marketing

The final disclosure challenged by Plaintiffs (Statement Five) relates to Wish's "goal [] to execute cost-effective and successful digital marketing strategies" and its "need to continue to invest in our marketing efforts to attract new users and increase user engagement."  SAC ¶ 104.  Plaintiffs allege that these statements "created a false impression . . . that Wish was continuing its advertising spending and marketing efforts so it could expand its user acquisitions in emerging markets, . . . when in fact, the Company had reduced its efforts to acquire users in emerging markets/key growth markets."  *Id.* ¶ 105.

Defendants argue that Plaintiffs "ignore the critical fact that Wish spent more on advertising in Q4 2020 than in any other reported quarter."  Mot. at 12.  Defendants add that "Plaintiffs plead no facts that Wish did *not* have a goal of 'execut[ing] cost-effective and

United States District Court
Northern District of California

1    successful digital marketing strategies," and they plead no facts demonstrating how temporarily

2    pausing advertising in four markets meant that Wish had abandoned this goal." *Id.* at 13 (quoting

3    SAC ¶ 105).  Defendants also contend that Statement Five is "nonactionable puffing."  *Id.*

4         Plaintiffs respond that the Court found that the allegations regarding "these omissions

5    'may be able to go forward with some beefing up,' which Plaintiffs have done through the SAC."

6    Opp. at 17 (quoting Sams Decl., Ex. 2 at 15).  Plaintiffs again rely on the argument that increased

7    global advertising spend is irrelevant to Wish's reduced advertising spend in emerging markets.

8    Plaintiffs also note that Defendants' expressed "goal" was stated in the context of their present-

9    tense representation that "[w]e will need to continue to invest in our marketing efforts to attract

10   new users and increase user engagement." SAC ¶ 104.

11        The Court agrees with Defendants.  Plaintiffs plead no facts demonstrating how Wish's de-

12   emphasizing strategy in four countries meant that Wish had abandoned its goals to "execute cost-

13   effective and successful digital marketing strategies" and "attract new users and increase user

14   engagement."  The statement speaks to a vague and general goal of being "successful" and "cost-

15   effective."  The alleged de-emphasizing strategy in countries where return on investment is down

16   and churn is up is not inconsistent with Wish's goal of being cost-effective.  *See Read-Rite*, 335

17   F.3d at 848.  Furthermore, Wish's disclosure that it "will need to continue to invest in marketing

18   efforts" does not specify specific markets, geographies, or types of users, and is thus bolstered by

19   Wish's all-time high global advertising spend in Q4 2020.

20        The Court also agrees with Defendants that Statement Five is "nonactionable puffing."

21   *See Restoration Robotics*, 417 F. Supp. 3d at 1255.  In *Restoration Robotics*, the court held that a

22   statement that "[o]ur *goal* is to expand the commercialization of the ARTAS System" is not

23   actionable because it is too vague for investors to rely on.  *Id.* at 1255 (emphasis in original).

24   Plaintiffs point to *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,

25   where the court found that disclosures about "clean diesel" were central to Volkswagen's specific

26   goal "of becoming the world's largest automobile manufacturer by 2018" and thus were not

27   puffery.  No. 2672 CRB (JSC), 2017 WL 66281, at *17 (N.D. Cal. Jan. 4, 2017).  The court

28   reasoned that the "allegations demonstrate[d] that Volkswagen focused on environmental

United States District Court
Northern District of California

friendliness as a core aspect" of the goal, so "it [was] plausible that a reasonable investor would view Volkswagen's failure to in fact be environmentally friendly as significantly altering the 'total mix' of information available." *Id.* But where the claims in *Volkswagen* centered around the specific goal of being a top automobile manufacturer, here, goals of executing "cost-effective and successful" strategies are "vague, generalized assertions of corporate optimism" and thus not actionable. *Restoration Robotics*, 417 F. Supp. 3d at 1255.

The Court finds that Plaintiffs have failed to allege that Statement Five—Wish's "goal [] to execute cost-effective and successful digital marketing strategies" and its "need to continue to invest in our marketing efforts to attract new users and increase user engagement"—was false or misleading. Thus, Defendants' Motion to Dismiss Plaintiffs' claims pertaining to Statement Five is granted. Furthermore, because statements of vague corporate optimism are not actionable, no additional facts would cure Plaintiffs' allegation. Defendants' Motion to Dismiss Plaintiffs' claims pertaining to Statement Five is granted without leave to amend.

### 5.  Item 105 Disclosure

Item 105 requires a company disclose a "a discussion of the material factors that make an investment in the registrant or offering speculative or risky." 17 C.F.R. §229.105; *see In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 769 n.4 (N.D. Cal. 2020); *Crews v. Rivian Auto., Inc.*, No. 2:22-CV-01524-JLS-E, 2023 WL 4361098, at *15 (C.D. Cal. July 3, 2023). "Allegations sufficient to state a claim under Items 105 and 303 are also sufficient to state a claim under Sections 11 . . . of the 1933 Act." *Crews*, 2023 WL 4361098, at *15.

Plaintiffs allege that the Registration Statement failed to disclose, pursuant to Item 105, "that Wish's reduced advertising and efforts to acquire users in emerging markets in the fourth quarter of 2020 could reasonably [] cause a material adverse impact on MAUs and Wish performance for the fourth quarter of 2020 and subsequent quarters, rendering an investment in Wish 'speculative or risky.'" SAC ¶ 106.

Defendants argue that Plaintiffs once again allege "no facts to suggest that Defendants knew at the time of IPO that the reduction in advertising made investment in Wish risky or would have a material effect on Wish's financial position." Mot. at 13 (quoting Order at 23). Defendants

again argue that global advertising spend and MAUs were up in Q4 and that decreased advertising spend in four emerging markets does not imply an advertising decrease across all emerging markets. *Id.* at 14.  Finally, Defendants state that Wish did address risk because the Registration Statement warned that Wish's "efforts to acquire new users and engage existing users may not be successful." Ex. 1 at 21.

Plaintiffs respond that "[t]he Court did not previously reject Plaintiffs' theory, but instead merely stated that the previous complaint did not state sufficient facts to support the theory and needed 'some beefing up.'" Opp. at 19 (quoting Sams Decl., Ex. 2 at 15).  Plaintiffs add that they now allege sufficient facts that employees regularly monitored MAUs and advertising spend and CEO Szulczekewski and CFO Bahri were aware of the advertising numbers and MAU data. *Id.*

The Court agrees with Plaintiffs.  Defendants are correct that the Court dismissed Plaintiffs' Item 105 allegations brought under the theory that Wish "'failed to disclose, . . . that in the fourth quarter of 2020 . . . [Wish] had pulled back advertising in India, Brazil, the Philippines and other emerging market countries outside of Europe and North America.'"  Order at 22 (quoting CAC ¶ 120).  The Court reasoned in part that Plaintiffs alleged "no facts to suggest that Defendants knew at the time of IPO that the reduction in advertising made investment in Wish risky or would have a material effect on Wish's financial position." *Id.* at 23.  But as discussed above, Plaintiffs have added substantial allegations that employees regularly monitored MAUs and advertising spend.  *See* ECF No. 103-2 (redline comparing CAC and SAC) ¶¶ 79–92.  These additional facts shore up what was previously a deficient allegation.  Where the CAC did not allege that Defendants had knowledge of Q4 MAUs, the SAC adequately alleges that knowledge.

Furthermore, a higher global advertising spend does not paper over risks created by the alleged de-emphasizing strategy in emerging markets due to real-time knowledge of churn by Wish employees and executives.  And that MAUs are up quarter-over-quarter is irrelevant because Plaintiffs allege a year-over-year MAU decrease.

Finally, Defendants' argument that "Wish did address the risk of losing users" also fails.  As the Court explained for Statement Two, Plaintiffs have alleged that the state of affairs differed from what Defendants disclosed in the Registration Statement, namely that Defendants'

24

disclosures warned that market strategies "could" or "may" fail when in fact Defendants knew in real time that they were failing.  Such misrepresentations are actionable under Item 105 if they "create an impression of a state of affairs that differ in a material way from the one that actually exist." *Bos. Ret. Sys. v. Uber Techs., Inc.*, No. 19-CV-06361-RS, 2020 WL 4569846, at *7 (N.D. Cal. Aug. 7, 2020); *Lyft*, 484 F. Supp. 3d at 769 n.4.

Thus, the Court concludes that Plaintiffs adequately allege that the Registration Statement failed to disclose, pursuant to Item 105 that an investment in Wish is "speculative or risky." Defendants' Motion to Dismiss Plaintiffs claims pertaining to Item 105 is denied.

## C.    Negative Causation Defense

Section 11 provides an affirmative defense that allows defendants "to prove that the plaintiff's loss, or some portion thereof, was not caused by the alleged misstatements or omissions in the registration statement." *In re Velti PLC Sec. Litig.*, 2015 WL 5736589, at *27 (N.D. Cal. Oct. 1, 2015); *see* 15 U.S.C. § 77k(e).  The "negative causation" defense may serve as the basis for a motion to dismiss where "the facts as alleged by plaintiffs . . . establish the affirmative defense as a matter of law."  *In re Shoretel Inc., Sec. Litig.*, 2009 WL 248326, at *5 (N.D. Cal. Feb. 2, 2009).  "The defendant has the burden of proof on this defense," and bears a "heavy burden." *Hildes*, 734 F.3d at 860.  "The determination of whether there is a causal link includes a temporal component—a disclosure followed by an immediate drop in stock price is more likely to have caused the decline—but timing is not dispositive."  *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020).

Specifically, the "defendant must show that the depreciation in value of a plaintiff's stock resulted from factors other than the alleged material misstatement.'"  *Hildes*, 734 F.3d at 860 (internal quotations omitted).  For example, in *Shoretel*, the court held that an alleged corrective disclosure "reveal[ed] nothing about what was allegedly misrepresented in or omitted from the Registration Statement" because it "merely disclosed that Shoretel's results for the quarter ending December 31, 2007 fell short of expectations and that a preliminary review revealed that sales to new customers had declined."  2009 WL 248326, at *5.  However, "there is no prohibition against . . . alleging loss causation through a series of disclosures by the Defendants."  *Metzler*, 540 F.3d

United States District Court
Northern District of California

1    at 1063.

2           Defendants argue that Plaintiffs' Section 11 claim also fails because Plaintiffs suffered no

3    recoverable losses because Wish's stock traded higher the day after the alleged corrective

4    disclosure was made, and continued to trade higher for weeks after.  Mot. at 15.

5           Plaintiffs respond that the SAC clearly alleges that the Company's "de-emphasizing

6    strategy continued materially impacting the Company's performance, financial condition and

7    results of operation for the next two quarters," which "related to the Company's announcements

8    on both March 8, 2021, and May 12, 2021."  Opp. at 21; SAC ¶¶ 7–8, 107–110.  Plaintiffs also

9    point to the Shareholder Letter as evidence that a continuation of the de-emphasis strategy caused

10   the drop in stock price.

11          The Court agrees with Defendants.  Plaintiffs have failed to plead that either the stock price

12   drop or disclosures (both on May 12, 2021) relate to the challenged portion of the Registration

13   Statement.  The only alleged disclosures on May 12, 2021 are that "Wish announced that its

14   MAUs declined" and "forward sales guidance also fell short," SAC ¶ 8, 110, which does not relate

15   to the challenged portions of the Registration Statement.  The SAC does allege that "[t]he 'de-

16   emphasizing' strategy that Wish took in the fourth quarter of 2020 continued to adversely impact

17   the Company's performance," *id.* ¶ 110, but that statement is not supported by any facts

18   connecting the May disclosures to the challenged portions of the Registration Statement.  Rather,

19   the alleged May disclosures "reveal nothing about what was allegedly misrepresented" in the

20   Registration Statement.  *Shoretel*, 2009 WL 248326, at *5.  Plaintiffs have failed to link the May

21   2021 stock drop to any revelation about a reduction in advertising spend that had not already been

22   disclosed in the March 8, 2021 corrective disclosure.  Instead, Defendants offer a persuasive

23   alternative explanation for the stock decline in May 2021 that sufficiently meets their heavy

24   burden to prove this defense.  First, they have shown that after the one corrective disclosure made

25   on March 8, 2021, the stock price actually increased and stayed at a higher level for more than two

26   weeks.  They additionally have shown that there were no later disclosures regarding the Q4 2020

27   decrease in advertising spend in emerging markets.  Finally, Defendants have shown that in May

28   2021, Wish disclosed disappointing Q1 2021 results including a decline in MAUs  and a decrease

United States District Court
Northern District of California

1    in future sales guidance. *Hildes*, 734 F. 3d at 860.

2          The Court recognizes that Plaintiffs have offered a May 2021 shareholder letter that they

3    argue would support their loss causation theory.  But that disclosure is not pled in the SAC, and

4    thus the Court declines to consider it here.  That said, the May 2021, Shareholder Letter may

5    support Plaintiffs' theory of loss causation or Plaintiffs may be able to allege additional facts to

6    overcome Defendants' alternative explanation.  On that basis, the Court will allow one final

7    opportunity to amend the complaint.

8          The Court therefore grants Defendants' Motion to Dismiss on the negative causation

9    defense with leave to amend.

10          **D.     Section 15 Allegation**

11          Because Plaintiffs fail to plead an underlying violation of Section 11, their claims under

12   Section 15 are dismissed as well with leave to amend.  *See Welgus v. TriNet Grp., Inc.*, 2017 WL

13   6466264, at *27 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019).

14   **IV.    ORDER**

15          For the foregoing reasons, IT IS HEREBY ORDERED that:

16          1.   Defendants' Motion to Dismiss Plaintiffs' Section 11 (Count I) and Section 15 (Count

17               II) claims related to Statement One is GRANTED WITHOUT LEAVE TO AMEND.

18          2.   Defendants' Motion to Dismiss Plaintiffs' Section 11 (Count I) and Section 15 (Count

19               II) claims related to Statement Two is DENIED.

20          3.   Defendants' Motion to Dismiss Plaintiffs' Section 11 (Count I) and Section 15 (Count

21               II) claims related to Statement Three is GRANTED WITHOUT LEAVE TO AMEND.

22          4.   Defendants' Motion to Dismiss Plaintiffs' Section 11 (Count I) and Section 15 (Count

23               II) claims related to Statement Four is GRANTED WITHOUT LEAVE TO AMEND.

24          5.   Defendants' Motion to Dismiss Plaintiffs' Section 11 (Count I) and Section 15 (Count

25               II) claims related to Statement Five is GRANTED WITHOUT LEAVE TO AMEND.

26          6.   Defendants' Motion to Dismiss Plaintiffs' Section 11 (Count I) and Section 15 (Count

27               II) claims pursuant to Item 105 is DENIED.

28          7.   Defendants' Motion to Dismiss Count I and Count II under the negative causation

United States District Court
Northern District of California

1

defense is GRANTED WITH LEAVE TO AMEND.

2

Any amended complaint shall be filed by February 15, 2024.  Plaintiffs may only amend

3

consistent with this order and are limited to amending the complaint regarding loss causation

4

without further order of the Court.  Plaintiffs shall also file a redlined version of the TAC.

5

6

Dated: December 22, 2023

7

_____

8

BETH LABSON FREEMAN
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California