Robert V. Prongay (SBN 270796)
Ex Kano S. Sams II (SBN 192936)
**GLANCY PRONGAY WOLKE & ROTTER LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
Email: esams@glancylaw.com

*Co-Lead Counsel for Lead Plaintiffs and the Proposed Settlement Class*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

YEN HOANG, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

CONTEXTLOGIC, INC., *et al.*,

Defendants.

Civil Action No. 5:21-cv-03930-BLF

**LEAD PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF LAW IN SUPPORT THEREOF**

**Hearing:**

Date: March 18, 2027
Time: 9:00 a.m.
Place: Courtroom 1-5th Floor

Judge: Hon. Beth Labson Freeman

## TABLE OF CONTENTS


NOTICE OF UNOPPOSED MOTION AND MOTION ........ 1

MEMORANDUM OF LAW ........ 3

I. PRELIMINARY STATEMENT ........ 3

II. SUMMARY OF LITIGATION AND PROCEDURAL HISTORY ........ 4

III. STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e) ........ 5

IV. ARGUMENT ........ 7

A. The Settlement is Fair, Reasonable, and Adequate in Light of the Factors Outlined by Rule 23(e)(2) and the Remaining *Hanlon* Factors ........ 7

1. Plaintiffs and Lead Counsel Adequately Represented the Settlement Class ........ 7

2. The Settlement is the Result of Arms'-Length Negotiations ........ 8

3. The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation ........ 8

(a) The Strength of Plaintiffs' Case and Risk of Continued Litigation ........ 9

(b) Risks of Maintaining Class Action Status ........ 10

4. Rule 23(e)(2)(C)(ii)-(iv) ........ 11

5. The Settlement Treats All Settlement Class Members Equitably Relative To Each Other ........ 12

6. The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval ........ 13

V. CLASS CERTIFICATION IS APPROPRIATE FOR SETTLEMENT PURPOSES ........ 15

A. The Settlement Class Is Sufficiently Numerous ........ 16

B. Common Questions of Law Or Fact Exist ........ 16

C. Plaintiffs' Claims Are Typical of Those of the Settlement Class ........ 17

D. Plaintiffs and Lead Counsel Adequately Represent the Settlement Class ........ 17

E. The Predominance and Superiority Requirements Are Satisfied ........ 17

VI. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ........ 18

VII. THE NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND PSLRA ........ 19

A. Retention of Strategic Claims Services (“SCS”) ........ 19

B. The Method of Notice is Adequate ........ 20

C. The Content of Notice is Adequate ........ 21

D. Claims Processing ........ 22

E. Estimated Notice and Administrative Costs ........ 22

VIII. ATTORNEYS’ FEES, LITIGATION EXPENSES AND PLAINTIFFS’ EXPENSES ........ 23

IX. CONCLUSION ........ 24

# TABLE OF AUTHORITIES

**Cases**

*Ali v. Franklin Wireless Corp.*,
2024 WL 5179910 (S.D. Cal. Dec. 19, 2024) .......... 10

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 18

*Baker v. SeaWorld Ent., Inc.*,
2020 WL 818893 (S.D. Cal. Feb. 19, 2020) .......... 20

*Baron v. HyreCar Inc.*,
2025 WL 3097076 (C.D. Cal. Mar. 7, 2025) .......... 14

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .......... 14

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) .......... 6

*Cullen v. RYVYL Inc.*,
2025 WL 3731036 (S.D. Cal. Dec. 19, 2025) .......... 10

*Gross v. GFI Grp., Inc.*,
784 F. App'x 27 (2d Cir. 2019) .......... 9

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... 6, 7, 16

*Hardy v. Embark Tech., Inc.*,
2023 WL 6276728 (N.D. Cal. Sept. 26, 2023) .......... 15

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .......... 11, 13

*In re Adobe Sys., Inc. Sec. Litig.*,
139 F.R.D. 150 (N.D. Cal. 1991) .......... 16

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) .......... 20

*In re American Apparel, Inc. Shareholder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014) .......... 23

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .......... 9

*In re Biolase, Inc. Sec. Litig.*,
2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) .... 15

*In re BofI Holding, Inc. Sec. Litig.*,
2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) .... 12

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
2015 WL 224631 (S.D. Cal. Jan. 15, 2015) .... 17

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .... 9

*In re China Med. Corp. Sec. Litig.*,
2013 WL 12126754 (C.D. Cal. May 16, 2013) .... 16

*In re FibroGen, Inc., Sec. Litig.*,
2025 WL 3526822 (N.D. Cal. Dec. 9, 2025) .... 19

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) .... 10

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) .... 15

*In re Juniper Networks, Inc. Sec. Litig.*,
264 F.R.D. 584 (N.D. Cal. 2009) .... 16

*In re Lidoderm Antitrust Litig.*,
2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) .... 23

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .... 14, 24

*In re Mut. Funds Inv. Litig.*,
2010 WL 2342413 (D. Md. May 19, 2010) .... 20

*In re Omnivision Tech., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .... 10, 18, 23

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .... 12, 24

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) .... 24

*In re Regulus Therapeutics Inc. Sec. Litig.*,
2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) .... 14

*In re Silver Wheaton Corp. Sec. Litig.*,
2017 WL 2039171 (C.D. Cal. May 11, 2017) .... 16, 17

*In re Stable Road Acquisition Corp. Sec. Litig.*,
2025 WL 924929 (C.D. Cal. March 24, 2025) .......... 19

*In re Stable Road Acquisition Corp.*,
2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) .......... 12, 18, 19

*In re Tezos Sec. Litig.*,
2020 WL 13699946 (N.D. Cal. Aug. 28, 2020) .......... 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. L*iab. Litig.,
2019 WL 2077847 (N.D. Cal. May 10, 2019) .......... 12

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) .......... 23

*In re Xcel Energy, Inc., Sec., Derivative & "E*RISA" Litig.,
364 F. Supp. 2d 980 (D. Minn. 2005) .......... 14

*In re Zynga Inc. Sec. Litig.*,
2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .......... 16

*Knapp v. Art.com, Inc.*,
283 F. Supp. 3d 823 (N.D. Cal. 2017) .......... 9

*Marshall v. Northrop Grumman Corp.*,
2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) .......... 23

*Middlesex Cnty. Ret. Sys. v. Semtech Corp.*,
2010 WL 11507255 (C.D. Cal. Aug. 27, 2010) .......... 17

*Mild v. PPG Indus., Inc.*,
2019 WL 3345714 (C.D. Cal. July 25, 2019) .......... 7

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
2009 WL 9100391 (C.D. Cal. June 24, 2009) .......... 23

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .......... 9, 15

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) .......... 13

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) .......... 23

*Persky v. Turley*,
1991 WL 329564 (D. Ariz. Dec. 20, 1991) .......... 17

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) .......... 10

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ........ 8

*Romero v. Producers Dairy Foods, Inc.*,
2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ........ 23

*Ross v. Trex Company, Inc.*,
2013 WL 12174133 (N.D. Cal. Dec. 16, 2013) ........ 24

*Scott v. ZST Digital Networks, Inc.*,
2013 WL 12123989 (C.D. Cal. Mar. 27, 2013) ........ 8

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
2022 WL 409702 (N.D. Cal. Feb. 10, 2022) ........ 7

*Sudunagunta v. NantKwest, Inc.*,
2019 WL 2183451 (C.D. Cal. May 13, 2019) ........ 8

*Turocy v. El Pollo Loco Holdings, Inc.*,
2018 WL 3343493 (C.D. Cal. July 3, 2018) ........ 16

*Vaccaro v. New Source Energy Partners L.P.*,
2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ........ 15

*Vikram v. First Student Management, LLC*,
2019 WL 1084169 (N.D. Cal. March 7, 2019) ........ 13

*Vinh Nguyen v. Radient Pharms. Corp.*,
287 F.R.D. 563 (C.D. Cal. 2012) ........ 16

*Wahl v. Yahoo! Inc.*,
2018 WL 6002323 (N.D. Cal. Nov. 15, 2018) ........ 7

*Wong v. Arlo Techs., Inc.*,
2021 WL 1146042 (N.D. Cal. Mar. 25, 2021) ........ 6, 8

*Yang v. Focus Media Holding Ltd.*,
2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ........ 12

*Yaron v. Intersect ENT, Inc.*,
2021 WL 5150052 (N.D. Cal. Nov. 5, 2021) ........ 19

**Statutes**

15 U.S.C. §77z-1(a)(7) ........ 21

15 U.S.C. § 77z-1(a)(4) ........ 24

15 U.S.C. § 78u-4(a)(4) ........ 13

28 U.S.C. § 1715 (2005) .......... 21

**Rules**

Fed. R. Civ. P. 23 .......... 19

Fed. R. Civ. P. 23(a)(2) .......... 16

Fed. R. Civ. P. 23(a)(4) .......... 17

Fed. R. Civ. P. 23(b)(3) .......... 17

Fed. R. Civ. P. 23(e) .......... 5, 6, 20

Fed. R. Civ. P. 23(e)(1) .......... 1, 5

Fed. R. Civ. P. 23(e)(2)(A) .......... 7

Fed. R. Civ. P. 23(e)(2)(A)-(B) .......... 8, 13

Fed. R. Civ. P. 23(e)(2)(B) .......... 8

Fed. R. Civ. P. 23(e)(2)(C) .......... 8, 11

Fed. R. Civ. P. 23(e)(2)(C)(i) .......... 8

Fed. R. Civ. P. 23(e)(2)(C)(ii) .......... 11

Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) .......... 11

Fed. R. Civ. P. 23(e)(2)(C)(iii) .......... 11

Fed. R. Civ. P. 23(e)(2)(C)(iv) .......... 12

Fed. R. Civ. P. 23(e)(2)(D) .......... 12

Fed. R. Civ. P. 23(e)(3) .......... 6

Fed. R. Civ. P. 23(e)(2) .......... 5, 6, 7, 13

Fed. R. Civ. P. 23(e)(5) .......... 21

**Regulations**

17 C.F.R. §240.10b-5 .......... 4

**NOTICE OF UNOPPOSED MOTION AND MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 18, 2027, at 9:00 a.m., in Courtroom 1 (5th Floor), or as soon thereafter as the matter may be heard, Lead Plaintiffs Xiaoquan Yang and Alexander De Block ("Plaintiffs") will, and hereby do, move the Honorable Beth Labson Freeman, United States District Judge, at the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure, for entry of the [Proposed] Order Preliminarily Approving Settlement and Providing Notice ("Preliminary Approval Order") submitted herewith.[1]

As set forth in the memorandum of law, the proposed Settlement is within the range of what could be found to be fair, reasonable, and adequate, such that notice of the Settlement's terms is appropriate and may be disseminated to members of the proposed Settlement Class. Accordingly, Plaintiffs request that the Court: (i) grant preliminary approval of the proposed Settlement on the terms set forth in the Stipulation of Settlement and exhibits thereto; (ii) approve the form and manner of giving notice of the proposed Settlement to the Settlement Class; (iii) preliminarily certify the Settlement Class and appoint Plaintiffs as the class representatives and Lead Counsel as class counsel for the Settlement Class; and (iv) set a hearing date to finally determine whether the proposed Settlement, proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses should be approved.

---

[1] Unless otherwise defined herein, all capitalized terms have the same meaning as set forth in the Stipulation and Agreement of Settlement dated September 16, 2026 ("Stipulation"). A true and correct copy of the Stipulation and its exhibits are attached as Exhibit 1 to the Joint Declaration of Ex Kano S. Sams II and Jacob A. Goldberg ("Joint Declaration"). Unless otherwise noted, all citations to "¶ " and "Ex. " refer, respectively, to paragraphs in, and exhibits to, the Joint Declaration, all "Rules" references are to the Federal Rules of Civil Procedure, all emphasis is added, and all citations and internal quotations are omitted.

The motion is based on the following memorandum, the Joint Declaration and exhibits thereto, including the Stipulation and further exhibits thereto, all prior pleadings and papers in this Action, and such additional information or argument as may be provided to the Court.

## MEMORANDUM OF LAW

## I. PRELIMINARY STATEMENT

The proposed Settlement will resolve all claims against Defendants in exchange for a non-reversionary, all cash payment of $3,500,000 (the "Settlement Amount") for the benefit of the Settlement Class. This is an excellent result for the Settlement Class given the procedural posture of the Action. Indeed, the Settlement was only reached on appeal, after Plaintiffs' claims had been dismissed multiple times, meaning that in the absence of the Settlement there was a substantial likelihood of no recovery at all. For this reason, and as further discussed herein, the Settlement is substantively fair.

The Settlement was also achieved in a procedurally fair manner. By the time the Settlement was reached, Plaintiffs and Lead Counsel were well informed about the strengths and weaknesses of the claims and Defendants' defenses. Prior to reaching the Settlement, Lead Counsel, among other things:

- conducted an extensive investigation into Defendants' allegedly wrongful acts, which included working with a private investigator to interview former ContextLogic employees, and consulting with experts in the fields of damages;
- drafted the 54-page (211 paragraph) Consolidated Amended Complaint (the "FAC"), the 40-page (133 paragraph) Second Consolidated Amended Complaint (the "SAC"), and the 51-page (137 paragraph) Third Consolidated Amended Complaint (the "TAC"), all based on research and investigation;
- engaged in substantial briefing opposing Defendants' motions to dismiss;
- filed the motion to alter the judgment granting Defendants' motion to dismiss the TAC;
- appealed the orders granting in whole or in part the Defendants' motions to dismiss the FAC, SAC, and TAC, the order denying Plaintiffs' motion to alter the judgment granting Defendants' motion to dismiss the TAC, and the judgment entered in favor of Defendants; and
- participated in several mediation sessions overseen by Sasha M. Cummings, a highly experienced, third-party, Circuit Mediator at the U.S. Court of Appeals for the Ninth Circuit (the "Mediator").

As discussed in detail below, Plaintiffs and Lead Counsel believe the proposed Settlement meets the standards for preliminary approval and is in the best interests of the putative Settlement Class.

Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the Preliminary Approval Order. Defendants do not oppose Plaintiffs' request.

## II. SUMMARY OF LITIGATION AND PROCEDURAL HISTORY

On May 25, 2021, the initial class action complaint was filed on behalf of investors in ContextLogic Inc. ("ContextLogic" or "Company"), ECF No. 1, asserting claims against Defendants under Sections 11, 12, and 15 of the Securities Act of 1933 ("Securities Act"), Sections 10(b), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder. 17 C.F.R. §240.10b-5.

On May 16, 2022, this Court appointed Xiaoquan Yang and Alexander De Block as Co-Lead Plaintiffs, approving Plaintiffs' selection of Rosen and Glancy as Co-Lead Counsel. ECF No. 73. On July 15, 2022, Plaintiffs filed the FAC, again asserting claims under the Securities Act and the Exchange Act. ECF No. 81. On March 10, 2023, the Court issued an order granting Defendants' motions to dismiss, but with leave to amend. ECF No. 98.

On April 10, 2023, Plaintiffs filed the SAC, ECF No. 103, asserting only Securities Act claims on behalf of all persons or entities that purchased or acquired ContextLogic common stock pursuant or traceable to the Company's Registration Statement. *Id.* On December 22, 2023, the Court granted in part and denied in part Defendants' motions to dismiss, granting leave to amend regarding Defendants' negative causation defense. ECF No. 124.

On February 15, 2024, Plaintiffs filed the TAC, ECF Nos. 125, 127, adding additional allegations that Defendants' misleading statements and omissions caused losses for Plaintiffs and the putative class on both March 8, 2021, and May 12, 2021. On August 22, 2024, the Court granted Defendants' motions to dismiss with prejudice, entering judgment for the failure of the TAC's additional allegations to overcome Defendants' negative causation defense. ECF Nos. 139-140.

On September 19, 2024, Plaintiffs filed a Rule 59(e) motion to alter judgment. ECF No. 142. On February 12, 2025, the Court denied Plaintiffs' motion to alter judgment. ECF No. 151. On March 13, 2025, Plaintiffs filed a notice of appeal to the United States Court of Appeals for the Ninth Circuit from: (1) the judgment entered in this action on August 22, 2024 (ECF No. 140); (2) the order granting motion to dismiss without leave to amend dated August 22, 2024 (ECF No. 139);

(3) the order granting in part and denying in part motion to dismiss with leave to amend dated December 22, 2023 (ECF No. 124); (4) the order granting motion to dismiss with leave to amend dated March 10, 2023 (ECF No. 98); and (5) the order denying plaintiffs' motion to alter the judgment dated February 12, 2025 (ECF No. 151). ECF No. 154. On September 8, 2025, Plaintiffs filed their opening brief with the Ninth Circuit. *Yang, et al. v. ContextLogic, Inc., et al.*, case no. 25-1805, ECF No. 36. On December 8, 2025, Defendants filed their answering brief. *Yang*, ECF No. 45. On January 28, 2026, Plaintiffs filed their reply brief. *Yang*, ECF No. 51.

In early 2025, as part of the appeal, the Parties agreed to discuss a possible resolution with the Mediator. Joint Decl., at ¶9. On April 29, 2025, the Parties engaged in a mediation session but did not reach an agreement to resolve the action or appeal. Joint Decl., at ¶10; *Yang*, ECF No. 28. However, the Parties agreed to, and engaged in, further negotiations. *Id.* On June 10, 2025, the Parties engaged in another mediation session but did not reach an agreement to resolve the action or appeal, but agreed to negotiate further. Joint Decl., at ¶10; *Yang*, ECF No. 29. On June 30, 2025, the Parties engaged in another mediation session but did not reach an agreement to resolve the action or appeal. Joint Decl., at ¶10; *Yang*, ECF No. 30. The Parties then decided to release the case from the Ninth Circuit's Mediation Program. Joint Decl., at ¶10; *Yang*, ECF No. 28.

Following briefing of the appeal, the Parties re-engaged in discussions, ultimately agreeing to resolve the matter for $3.5 million. Joint Decl., at ¶11; *Yang*, ECF Nos. 36, 45, 51. On June 3, 2026, the Parties filed a stipulation to dismiss the appeal without prejudice. Joint Decl., at ¶11; *Yang*, ECF No. 60. On June 4, 2026, the Ninth Circuit's order dismissing the appeal without prejudice was filed in this Court. Joint Decl., at ¶11; ECF No. 159. On June 5, 2026, Lead Counsel filed a letter with the Court on behalf of the Parties to report the settlement and set the deadline to file this motion for preliminary approval of the settlement. Joint Decl., at ¶11; ECF No. 160. On May 29, 2026, the Parties executed a term sheet, setting forth the material terms of their agreement. Joint Decl., at ¶11.

## III. STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

Rule 23(e) provides that a class action settlement must be presented for Court approval, and be approved if the Court finds it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the

Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.* Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

> (A) have the class representatives and class counsel adequately represented the class;
> (B) was the proposal negotiated at arm's length;
> (C) is the relief provided for the class adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) does the proposal treat class members equitably relative to each other.

The Rule 23(e)(2) factors are not exclusive, nor intended to displace any factor previously adopted by the courts. Thus, the Ninth Circuit's traditional factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) strength of the plaintiff's case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout the trial; (4) amount offered in settlement; (5) extent of discovery completed and stage of the proceeding; (6) experience and views of counsel; (7) presence of a government participant; and (8) reaction of class members to the proposed settlement.[2]

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *accord Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Wong v. Arlo Techs., Inc.*, 2021 WL 1146042, at *6 (N.D. Cal. Mar. 25, 2021) (recognizing Rule 23(e)'s considerations "overlap with certain Hanlon factors."). As set forth below, the proposed Settlement satisfies the preliminary approval criteria under the four Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Hanlon* factors.

---

[2] The Court does not yet have the benefit of the Settlement Class's reaction as notice of the proposed Settlement has not yet been provided to the Settlement Class. There is no government participant.

# IV. ARGUMENT

## A. The Settlement is Fair, Reasonable, and Adequate in Light of the Factors Outlined by Rule 23(e)(2) and the Remaining *Hanlon* Factors

### 1. Plaintiffs and Lead Counsel Adequately Represented the Settlement Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs and Lead Counsel adequately represented the Settlement Class both during the litigation of this Action and its settlement. Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests; rather, Plaintiffs' interests in obtaining the largest possible recovery in this Action are aligned with the other Settlement Class Members. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Additionally, Plaintiffs worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for Plaintiffs and the Settlement Class.

Courts have also given considerable weight to the opinion of experienced and informed counsel who support settlement. *See Wahl v. Yahoo! Inc.*, 2018 WL 6002323, at *4 (N.D. Cal. Nov. 15, 2018) ("Plaintiff and Defendants are represented by experienced counsel, whose views on the settlement are entitled to significant weight.") (Freeman, J.); *SEB Inv. Mgmt. AB v. Symantec Corp.*, 2022 WL 409702, at *7 (N.D. Cal. Feb. 10, 2022) ("Class counsel . . . is experienced in securities litigation so their support behind the settlement carries weight."). Here, Plaintiffs retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. *See* Exs. 5 & 6 (Glancy and Rosen firm résumés). Lead Counsel vigorously prosecuted the Settlement Class's claims throughout the litigation by, among

other things, conducting an extensive investigation, drafting the amended complaints, briefing the motions to dismiss and appeal, and obtaining a $3.5 million Settlement for the benefit of the Settlement Class. Accordingly, this factor supports preliminary approval.

**2. The Settlement is the Result of Arms'-Length Negotiations**

Rule 23(e)(2)(B) requires procedural fairness, specifically, that "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B); *see also Arlo*, 2021 WL 1146042, at *6 (noting that Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings."). The Ninth Circuit, as well as courts in this District, "put a good deal of stock in the product of an arm[']s-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). As detailed above, and in the Joint Declaration, the Settlement is the product of arm's-length, non-collusive negotiations by informed counsel; a conclusion that is buttressed by the duration of the negotiations and involvement of an experienced mediator. *See* Joint Decl., at ¶¶9-11; *Yang*, ECF Nos. 28-29, 45, 51; *see also Sudunagunta v. NantKwest, Inc.*, 2019 WL 2183451, at *3 (C.D. Cal. May 13, 2019) (the "assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive[.]"); *Scott v. ZST Digital Networks, Inc.*, 2013 WL 12123989, at *6 (C.D. Cal. Mar. 27, 2013) ("There can be little doubt that the negotiations in this case, which were conducted at arm's-length by counsel over the span of several months, were serious, informed and non-collusive. The parties were represented by experienced counsel who bargained in an adversarial manner").

**3. The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation**

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C); *see also Arlo*, 2021 WL 1146042, at *8 (Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiffs' case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor); and the risks of maintaining class action status through the trial (third factor)). As

discussed below, each of these factors supports the Settlement's approval.

**(a) The Strength of Plaintiffs' Case and Risk of Continued Litigation**

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of a recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017). While Lead Counsel believes Plaintiffs' claims have merit, they also recognize the substantial obstacles before any recovery. When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation and support preliminary approval. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

At the time the Settlement was reached, the Court had dismissed the TAC based on Defendants' negative causation defense, denied Plaintiffs' motion to alter that judgment, and the appeal was fully briefed. While Plaintiffs believe they effectively demonstrated that Defendants failed to establish a negative causation defense (ECF No. 133), Lead Counsel knows from painful experience that even winning at earlier points in a case does not guarantee a recovery. *See Gross v. GFI Grp., Inc.*, 784 F. App'x 27, 29 (2d Cir. 2019) (affirming grant of summary judgment on the alternative ground that Defendant's "statement did not, as a matter of law, amount to a material misrepresentation or omission actionable under section 10(b)," despite the trial court ***twice*** finding the statement actionable). Defendants' negative causation defense posed substantial risks to recovery at trial because each side would have presented expert testimony, requiring a jury to decide a so-called "battle of the experts." *See In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016) ("Courts have recognized that, in a 'battle of experts,' the outcome cannot be guaranteed."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a battle of experts with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

"In addition to risk and unpredictability, prolonged litigation would also impose substantial costs and delays, especially since securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *Cullen v. RYVYL Inc.*, 2025 WL 3731036, at *7 (S.D. Cal. Dec. 19, 2025). The Parties would have endured fact discovery, designation of experts, expert discovery, a likely motion for class certification, likely motions for summary judgment, and trial. Plaintiffs also expected significant post-trial motions practice and appeals if they obtained a favorable judgment. *See id.* Although Plaintiffs are confident in this case, success in these types of cases is never guaranteed at the pleading stage. *See* Ex. 2 (NERA Report, at 18, Fig. 15) (motion to dismiss filed in 96% of the securities class action cases in the last ten years, and in cases where the motion was decided, 62% were granted with or without prejudice, 21% were partially granted, and only 17% denied in full). Indeed, success was not guaranteed even after a successful trial. *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) ($81 million jury verdict for plaintiffs reversed on appeal on loss causation grounds and judgment entered for defendant); *In re Apple Computer Sec. Litig.*, 1991 WL 238298, at *1-2 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions). "Balancing the complexity, uncertainty, and delay of continued litigation against the immediacy and certainty of settlement, these factors weigh in favor of approval." *Ali v. Franklin Wireless Corp.*, 2024 WL 5179910, at *6 (S.D. Cal. Dec. 19, 2024).

**(b) Risks of Maintaining Class Action Status**

While Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for certification (*see* Sec. V, *infra*) a class has not yet been certified and Plaintiffs are aware that there is a risk the Court could disagree. Even if the Court were to certify the class, there is always a risk that the class could be decertified at a later stage in the proceedings. *See*, *e.g.*, *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendant might have sought decertification or modification of the class"). Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement, as Defendants undoubtedly would have challenged class certification if Plaintiffs had reached that stage. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019) ("Although the risk of maintaining a class through

trial is present in [every] class action … this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated.").

**4. Rule 23(e)(2)(C)(ii)-(iv)**

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the Settlement Class is adequate. Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). These factors weigh in support of the Settlement.

**Rule 23(e)(2)(C)(ii):** The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Here, Strategic Claims Services ("SCS"), the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow Claimants an opportunity to cure any Claim deficiencies or request the Court to review a denial of their Claim(s), and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund. *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018) ("The Court further finds that the proposed claims process provides an effective method of implementing that plan by ensuring that the claimant provides sufficient information to calculate the recognized loss amount."). Notably, this is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the Claims submitted. *See* Stipulation ¶13.

**Rule 23(e)(2)(C)(iii):** As disclosed in the Postcard Notice and Notice, Lead Counsel will apply for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services rendered on behalf of the Settlement Class. As discussed in detail below (*see* Sec. VIII, *infra*), a proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action

cases. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving fee equal to 33% of a $12 million settlement fund); *In re Tezos Sec. Litig.*, 2020 WL 13699946, at *1 (N.D. Cal. Aug. 28, 2020) (awarding 33.33% of $25 million settlement fund). More importantly, approval of the requested attorneys' fees is separate from Settlement approval, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶16.

**Rule 23(e)(2)(C)(iv):** The Parties have entered a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members that purchased a certain percentage of ContextLogic common stock request exclusion from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *7 (C.D. Cal. Apr. 23, 2024).

### 5. The Settlement Treats All Settlement Class Members Equitably Relative To Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *See Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *10 (S.D.N.Y. Sept. 4, 2014) ("the Plan of Allocation ensures an equitable *pro rata* distribution of the Net Settlement Fund among all Authorized Claimants based solely on when they purchased and sold shares, taking into account the relative amounts of artificial inflation prevailing during the Class Period."); *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *7–8 (S.D. Cal. Oct. 14, 2022) (finding *pro rata* distribution of settlement constituted equitable treatment of class members).

Plaintiffs will also seek reimbursement of costs incurred in representing the Settlement Class, as authorized by the PSLRA. Such awards do "not constitute inequitable treatment of Settlement Class Members." *Stable Road*, 2024 WL 3643393, at *8; *see also In re Volkswagen*

*"Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) ("The PSLRA expressly permits an award of 'reasonable costs and expenses' to 'any representative party serving on behalf of a class.'") (quoting 15 U.S.C. § 78u-4(a)(4)).

#### 6. The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval

*Hanlon* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new factors.[3] These factors, viewed in light of the Rule 23(e)(2) factors identified above, support preliminary approval.

**<u>The Amount Offered in Settlement:</u>** "To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery against the value of the settlement offer." *Hefler*, 2018 WL 6619983, at *9. "This determination requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount." *Vikram v. First Student Management, LLC*, 2019 WL 1084169, at *3 (N.D. Cal. March 7, 2019). Indeed, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982).

Here, Plaintiffs' damages expert estimates that ***if*** Plaintiffs had fully survived Defendants' motion to dismiss and summary judgment motions, ***if*** the Court certified the same class as the Settlement Class, ***and if*** the Court and jury accepted Plaintiffs' theory, *i.e.*, Plaintiffs' ***best case scenario***—the total damages would be approximately $241 million. Under such a scenario, the $3.5 million recovery represents approximately 1.45% of the estimated maximum damages potentially available in this Action. This case was not, however, risk free, and there were meaningful barriers

---

[3] Although courts within the Ninth Circuit have recognized that Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, such as the extent of discovery completed and the experience and view of counsel, these factors are briefed below for thoroughness.

to recovery. For example, in addition to the risks set forth above (*see* Sec. IV.A.3(a), *supra*), Plaintiffs would have had to prevail on their appeal to recover anything.

Under the circumstances, a recovery in the range of 1.45% of damages is well-within the range of reasonableness. *See* Ex. 2 (NERA Report, at 27, Fig. 23) (median recovery for securities class actions that settled in the last ten years was 2.7% for cases with estimated damages between $200-$399 million); *see also In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving 1.99% recovery); *Baron v. HyreCar Inc.*, 2025 WL 3097076, at *7 (C.D. Cal. Mar. 7, 2025) (recovery of 2% of maximum damages "is in line with percentage recoveries other courts have found to be fair and adequate.").

Given the range of possible results in this litigation—***including no recovery at all***—there can be no question that the Settlement constitutes a considerable achievement and weighs heavily in favor of preliminary approval. *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder … litigation to assess the risks involved."); *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019) ("In this case, continued litigation involved substantial risk for Plaintiffs. This Court has already granted three motions to dismiss, and a fourth is pending.").

**The Extent of Discovery Completed and the Stage of the Proceeding:** In considering a class action settlement, courts look for indications that the parties carefully investigated the claims before reaching a resolution. *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[i]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.").

Here, Plaintiffs conducted an extensive investigation into ContextLogic, including, among other things: interviewing former employees; analyzing the Company's myriad SEC filings; and consulting with experts. The Parties submitted substantial briefing relating to the motions to dismiss, the motion to alter judgment, and the appeal. The fact that there has been no formal discovery in the Action does not weigh against preliminary approval, especially given the PSLRA discovery stay in

securities class actions. *See In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *5 (C.D. Cal. Oct. 13, 2015) (finding "Lead Plaintiff possesses sufficient information to make an informed settlement decision" and "this factor weighs in favor of granting final approval" under circumstances substantially similar to the case at bar); *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Lead Plaintiffs (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the ... industry. The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.").

**<u>The Experience and Views of Counsel:</u>** "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm.*, 221 F.R.D. at 528. Here, Lead Counsel has extensive experience in securities litigation and has obtained a thorough understanding of the merits and risks of the Action. *See* Exs. 5-6 (firm résumés). Under such circumstances, Lead Counsel's conclusion that the Settlement is fair and reasonable and in the best interests of the Settlement Class supports preliminary approval. *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.").

## V. CLASS CERTIFICATION IS APPROPRIATE FOR SETTLEMENT PURPOSES

Pursuant to Rules 23(a) and (b)(3), Plaintiffs respectfully request that the Court preliminarily certify, for settlement purposes only, a Settlement Class consisting of: "all persons or entities that purchased or otherwise acquired ContextLogic common stock pursuant or traceable to the Registration Statement and Prospectus (collectively, "Registration Statement") issued in connection with the Company's Initial Public Offering, or who purchased or otherwise acquired ContextLogic common stock between December 16, 2020 and May 12, 2021, both dates inclusive (the "Settlement Class Period"), and were damaged thereby." Stipulation, ¶1(rr) (defining "Settlement Class" and detailing various exclusions therefrom). Courts in the Ninth Circuit and within this District routinely certify securities class actions such as this one. *See Hardy v. Embark Tech., Inc.*, 2023 WL 6276728,

at *3-5 (N.D. Cal. Sept. 26, 2023); *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150 (N.D. Cal. 1991); *Turocy v. El Pollo Loco Holdings, Inc.*, 2018 WL 3343493 (C.D. Cal. July 3, 2018); *In re Silver Wheaton Corp. Sec. Litig.*, 2017 WL 2039171 (C.D. Cal. May 11, 2017).

### A. The Settlement Class Is Sufficiently Numerous

For numerosity purposes, "classes of forty or more are considered sufficiently numerous." *In re China Med. Corp. Sec. Litig.*, 2013 WL 12126754, at *2 (C.D. Cal. May 16, 2013). In securities fraud cases involving nationally traded stocks where, as here, "the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *Vinh Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012). The Settlement Class comprises, among others, purchasers of ContextLogic common stock, which traded on the NASDAQ during the Settlement Class Period. There are likely thousands of Settlement Class members. Thus, the Settlement Class satisfies numerosity.

### B. Common Questions of Law Or Fact Exist

To maintain a class action, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied if there is one issue common to the class members. *Hanlon*, 150 F.3d at 1019. Not all questions of fact and law need be common to satisfy Rule 23(a)(2). *Id.* Indeed, this factor is "construed permissively, and the existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* (cleaned up).

This case involves several common questions of law and fact, including whether: (1) Defendants violated the Securities Act; (2) the Registration Statement misrepresented material facts; (3) the Registration Statement omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and (4) the Settlement Class members have sustained damages and, if so, what is the proper measure of damages. *See* ECF No. 125, ¶121. Commonality is satisfied even though the amount to which each class member is entitled will differ. *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *6 (N.D. Cal. Oct. 27, 2015); *In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 588 (N.D. Cal. 2009) ("misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2)").

### C. Plaintiffs' Claims Are Typical of Those of the Settlement Class

"[T]ypicality is satisfied if the plaintiff's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Silver Wheaton*, 2017 WL 2039171, at *7. Where plaintiffs allege that they purchased the stock in question and suffered damages because of defendants' misstatements or omissions, their claims are typical of the class. *Id.* Here, Plaintiffs purchased ContextLogic common stock pursuant or traceable to the Registration Statement and suffered losses as a result. *See* ECF Nos. 21-1, 21-2; 47 at ¶24. There is no indication that Plaintiffs' claims are atypical of those of the Settlement Class or that unique defenses apply to Plaintiffs' claims. *See Middlesex Cnty. Ret. Sys. v. Semtech Corp.*, 2010 WL 11507255, at *4-5 (C.D. Cal. Aug. 27, 2010). Thus, Plaintiffs satisfy the typicality requirement. *In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) ("Here, Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class members. They are, therefore, typical of the class.").

### D. Plaintiffs and Lead Counsel Adequately Represent the Settlement Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." As explained in Sec. IV.A.1., *supra*, this requirement is met here.

### E. The Predominance and Superiority Requirements Are Satisfied

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Here, common questions predominate—for example, whether the Registration Statement misrepresented material facts and/or omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading. Such questions predominate over individual issues such as the computation of Settlement Class Members' losses, which will be efficiently handled through the claims administration process. *See Persky v. Turley*, 1991 WL 329564, at *3 (D. Ariz. Dec. 20, 1991) (finding that common issues relating to defendants' alleged misrepresentations predominate even though "[i]n securities claims it is common for the representative's personal claims to differ

from the claims of the other class members in such matters as dates of purchase and sale, size of transaction, sophistication of investors and degree of reliance").

Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this controversy because damages suffered by most Settlement Class Members would not be sufficient to make it economical to prosecute separate actions. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action. … A class action solves this problem[.]").

The Settlement Class is, therefore, suitable for certification.

## VI. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Lead Counsel also seek preliminary approval of the proposed Plan of Allocation of the settlement proceeds, which is set forth in the Notice that will be posted on the Settlement website. *See* Exhibit A-1 to the Stipulation ("Notice") at ¶¶53-68. A plan of allocation in a class action "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable, and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. "To meet this standard, a plan of allocation recommended by experienced and competent class counsel need only have a reasonable and rational basis." *Stable Road*, 2024 WL 3643393, at *10.

The proposed Plan of Allocation provides an equitable basis to allocate the Net Settlement Fund among all Class Members who submit an acceptable Claim Form. The Plan of Allocation was developed by Lead Counsel, with the assistance of a consulting damages expert, and reflects an assessment of damages that Plaintiffs contend could have been recovered under the theories of liability asserted in the Action.

The Plan of Allocation calculates a "Recognized Loss Amount" as:

(1) For each share that was sold prior to May 17, 2021, the Recognized Loss Amount is the lesser of the purchase price and $24.00, *minus* the sale price; or

(2) For each share held through the opening of trading on May 17, 2021, the Recognized Loss Amount is the lesser of the purchase price and $24.00, *minus* $8.78.

Notice ¶57.

The Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims, which will be the sum of his, her, or its Recognized Loss Amounts for all shares of ContextLogic common stock. Specifically, a "Distribution Amount" will be calculated for each Authorized Claimant, which shall be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. If any Authorized Claimant's Distribution Amount calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to such Authorized Claimant. *See id*, at ¶¶17, 58, 61.

If any funds remain after an initial distribution to Authorized Claimants, because of uncashed or returned checks or other reasons, subsequent distributions will also be conducted as long as they are cost-effective. Joint Decl., ¶¶32, 58. The Joint Declaration also identifies the Public Justice Foundation as the proposed *cy pres* recipient for any residual funds that may remain after all cost-effective distributions of the Net Settlement Fund to Authorized Claimants have been completed. *See Id.* ¶¶33, 57-60,; *see also* N.D. Cal. Guid. at ¶8. The Public Justice Foundation is an appropriate *cy pres* recipient because of the nature of the securities fraud claims asserted in the Action, and this Court, as well as others in this Circuit, have approved it as a *cy pres* recipient in similar actions, including *In re FibroGen, Inc., Sec. Litig.*, 2025 WL 3526822, at *5 (N.D. Cal. Dec. 9, 2025); and *In re Stable Road Acquisition Corp. Sec. Litig.*, 2025 WL 924929, at *2 (C.D. Cal. March 24, 2025). Lead Counsel believes that the Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Class Members who submit valid claims. *See Yaron v. Intersect ENT, Inc.*, 2021 WL 5150052, at *1 (N.D. Cal. Nov. 5, 2021) (approving substantially similar plan of allocation); *Stable Road*, 2024 WL 3643393, at *10-11 (same).

## VII. THE NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND PSLRA

### A. Retention of Strategic Claims Services ("SCS")

Plaintiffs propose that the notice and claims process be administered by Strategic Claims Services ("SCS"), an independent settlement and claims administrator with extensive experience handling the administration of securities class actions. Ex. 3 (Declaration of Paul Mulholland in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement

("Mulholland Decl.")) at ¶¶1-3, Exs. A-C. SCS was selected after a competitive bidding process in which three firms submitted proposals to be selected as administrator, and SCS was the lowest bidder. Joint Decl., ¶38. Each proposal involved comparable methods of providing notice and claims processing, including use of first-class mail, email, and identifying potential Settlement Class Members through brokers and nominee owners. *Id.* ¶¶38-39. Lead Counsel has engaged SCS to serve as settlement administrator in several other cases in the past two years and found SCS to be a reliable administrator for these types of cases. *Id.* ¶40, Ex. 4.

**B. The Method of Notice is Adequate**

Rule 23(e) provides that a class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. Here, the Parties propose to mail, by first class mail, individual copies of the Postcard Notice (Exhibit A-4 to the Stipulation), and/or to email a link to the Notice (Exhibit A-1 to the Stipulation) and Claim Form (Exhibit A-2 to the Stipulation; and together with the Notice, the "Notice Packet"), to all Settlement Class Members who can be identified with reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock. Contemporaneously with the mailing of the Postcard Notice and emailing of the Notice Packet, copies of the Notice and the Claim Form will be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form can be downloaded, and where claims can be submitted online. Upon request, the Claims Administrator will also mail or email copies of the Notice and/or Claim Form. No more than ten (10) business days after mailing the Postcard Notice, the Summary Notice (Exhibit A-3 to the Stipulation) will be published in the national edition of *Investor's Business Daily* and transmitted once over the *PR Newswire*.

Courts routinely find that these methods of notice are sufficient. In particular, "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Baker v. SeaWorld Ent., Inc.*, 2020 WL 818893, at *2–*3 (S.D. Cal. Feb. 19, 2020) (approving similar notice program); *In re Mut. Funds Inv. Litig.*, 2010 WL 2342413,

at *6-*7 (D. Md. May 19, 2010) (finding that a combination of postcard notice, summary notice, and a detailed notice available online "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlements").

**C. The Content of Notice is Adequate**

Plaintiffs respectfully submit that the Court should approve the form and content of the proposed Notice and Summary Notice. *See* Exhibits A-1 and A-3 to the Stipulation. The Notice is written in plain language and clearly sets out the relevant information and answers to most questions that Settlement Class Members will have. Consistent with Rules 23(c)(2) and 23(e)(1), the Notice apprises all Settlement Class Members of the nature of the Action, the definition of the Settlement Class, the claims, that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion (and sets forth the procedures and deadlines for doing so), and the binding effect of a class judgment on Settlement Class Members.

With respect to items relating to the Settlement, the Notice also satisfies the separate disclosure requirements imposed by the PSLRA. *See* 15 U.S.C. §77z-1(a)(7). It states: the amount of the Settlement on an absolute and per-share basis; provides a statement concerning the issues about which the Parties disagree; states the amount of attorneys' fees and Litigation Expenses that Lead Counsel will seek; provides the names, address, and telephone number of Lead Counsel, who will be available to answer questions from Class Members; and provides a brief statement explaining the reasons why the Parties are proposing the Settlement. *Id.*

The Notice also meets the Northern District of California Procedural Guidance for Class Action Settlements in that it includes, among other things, (1) "contact information for class counsel to answer questions"; (2) the address for the settlement website; and (3) "instructions on how to access the case docket." N.D. Cal. Guid. at ¶3. The Notice will also disclose the date, time, and location of the Settlement Hearing and the procedures and deadlines for the submission of Claim Forms, requests for exclusion from the Settlement Class, and objections to any aspect of the Settlement, the Plan of Allocation, or attorneys' fees and Litigation Expenses. *See* Fed. R. Civ. P. 23(e)(5). In addition, no later than ten calendar days following the filing of the Stipulation with the Court, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. §

1715 (2005), *et seq*. ("CAFA"). *See* Stipulation ¶58; *see also* N.D. Cal. Guid. at ¶10.

**D. Claims Processing**

The net proceeds of the Settlement will be distributed to Settlement Class Members who submit eligible Claim Forms with required documentation to SCS. SCS will review and process the claims under the supervision of Lead Counsel, will provide claimants with an opportunity to cure any deficiencies in their claim(s) or request review of the denial of their claim(s) by the Court, and will then mail or wire claimants their *pro rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court.

SCS estimates that a total of 115,000 copies of the Postcard Notice will be mailed, or Notice Packets emailed, approximately 40,250 Claims will be received (a 35% response rate is estimated), and that SCS will disseminate 24,150 payments (60% valid Claims). Mulholland Decl., ¶23. These estimates are based on the experience of SCS and Lead Counsel in comparable securities class action settlements.

**E. Estimated Notice and Administrative Costs**

SCS's fees for administration of the Settlement are charged on a per-claim basis and its expenses will be billed separately (including expenses for printing and mailing the Postcard Notice, publishing the Summary Notice, establishing and maintaining the Settlement Website, and establishing and operating the toll-free telephone helpline). Because the costs are dependent on, among other things, how many copies of the Postcard Notice are ultimately mailed and Notice Packets emailed, and how many claims are ultimately received and processed, at this time only an estimate of the total Notice and Administration Costs can be provided. Based on the above estimates, SCS estimates that the total Notice and Administration Costs for the Action will be approximately $170,000. These costs are necessary to effectuate the Settlement and are reasonable in relation to the value of the Settlement (the estimated administrative costs represent 4.86% of the Settlement Amount). Mulholland Decl., ¶¶25-26. The Notice and Administration Costs will be paid from the Settlement Fund. *See* Stipulation ¶9.

## VIII. ATTORNEYS' FEES, LITIGATION EXPENSES AND PLAINTIFFS' EXPENSES

As explained in the Notice and Postcard Notice, Lead Counsel intends to seek an award of attorneys' fees of up to 33⅓% of the Settlement Fund (*i.e.*, one-third of the Settlement Amount, or $1,166,666, plus interest earned thereon at the same rate as the Settlement Fund), and payment of Litigation Expenses not to exceed $113,000. Lead Counsel will provide detailed information in support of its application in its motion for attorneys' fees and Litigation Expenses, to be filed with the Court before the Settlement Hearing. However, for purposes of the Court's preliminary review in connection with this motion for preliminary approval of the Settlement, Lead Counsel respectfully submits that the fee Lead Counsel will request is within the range of reasonableness.

In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272–73 (9th Cir. 1989), the Ninth Circuit established 25% of the fund as the "benchmark" award for attorneys' fees. However, "a reasonable fee award is the hallmark of common fund cases" and the guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 n.2 (9th Cir. 1994). As applied, this means that "in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047; *see also In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018) (awarding 33⅓% of $104,750,000 and stating: "a fee award of one-third is within the range of awards in this Circuit."); *Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *8 (C.D. Cal. Sept. 18, 2020) (awarding one-third of $12.375 million settlement fund, collecting cases and stating: "[a]n attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions."); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 2009 WL 9100391, at *4 (C.D. Cal. June 24, 2009) (reviewing empirical research and stating: "[n]ationally, the average percentage of the fund award in class actions is approximately one-third."); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and stating "'[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery'") (*citing* 4 Newberg and Conte, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)). "This is particularly true in securities class actions such as this." *In re American Apparel, Inc. Shareholder*

*Litig.*, 2014 WL 10212865, at *23 (C.D. Cal. July 28, 2014); *see also Pac. Enters.*, 47 F.3d at 379 (affirming a 33% attorneys' fees award in a case where the settlement fund was $12 million); *In re Mego Fin. Corp.*, 213 F.3d at 463 (affirming award of one-third of the total recovery). Thus, an attorneys' fee request of one-third of the Settlement Fund would be fair and reasonable.

A lodestar cross-check confirms the reasonableness of the request. The requested fee will represent a fractional (or "negative") multiplier of 0.328 on Lead Counsel's lodestar, which is a strong indication of its reasonableness. *See* Joint Decl., ¶54; *see also Ross v. Trex Company, Inc.*, 2013 WL 12174133, at *1 (N.D. Cal. Dec. 16, 2013) ("Plaintiffs sought no extraordinary award of fees; to the contrary, they sought less than their lodestar, which further supports the reasonableness of the fees requested and awarded."); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) ("The resulting so-called negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel.").

Lead Counsel also intend to seek reimbursement of out-of-pocket costs and expenses in an amount not to exceed $103,000, which includes costs for the investigator who assisted with Lead Counsel's fact investigation, mediation fees, and expert fees. Joint Decl., ¶55. As part of this request, Lead Counsel intends to seek an award for Plaintiffs, pursuant to the PSLRA (15 U.S.C. § 77z-1(a)(4)), in an aggregate amount not to exceed $10,000. *Id.*, ¶56. Lead Counsel believes this amount is fully supported by the work that Plaintiffs performed throughout the Action, which will be presented to the Court in connection with Plaintiffs' request for reimbursement. *See id.*; *see also* N.D. Cal. Proc. Guid. ¶7.

## IX. CONCLUSION

Plaintiffs respectfully request that the Court grant the unopposed motion for preliminary approval of the Settlement, approve the forms and methods of notice, and enter the proposed Preliminary Approval Order. As this motion is unopposed, Plaintiffs respectfully request that the Court consider this motion for preliminary approval on the papers. A proposed timeline of procedural events is set forth in paragraph 61 of the Joint Declaration.

Dated: October 14, 2026

**GLANCY PRONGAY WOLKE & ROTTER LLP**

By: _/s/ Ex Kano S. Sams II_

Robert V. Prongay
Ex Kano S. Sams II
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Email: rprongay@glancylaw.com
Email: esams@glancylaw.com

**THE ROSEN LAW FIRM, P.A.**

By: _/s/Jacob A. Golberg_

Jacob A. Goldberg
101 Greenwood Avenue, Suite 520
Jenkintown, PA 19046
Tel: (215) 600-2817
Email: jgoldberg@rosenlegal.com

-and-

Laurence M. Rosen
Jing Chen
275 Madison Avenue, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Email: lrosen@rosenlegal.com
Email: jchen@rosenlegal.com

*Lead Counsel for Plaintiffs and the Proposed Settlement Class*

**LAW OFFICES OF HOWARD G. SMITH**

Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem PA 19020
Telephone: (215) 638-4847

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned, say:

I am not a party to the above case, and am over eighteen years old. On October 14, 2026, I served true and correct copies of the foregoing document, by posted the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 14, 2026, at Jenkintown, Pennsylvania.

*/s/ Jacob A. Goldberg*
Jacob A. Goldberg